## *Murray McConnel *et al.*

### *v.*

## David A. Smith, Administrator of Jerome McKee, Sr., deceased, *et al.*

1.  Posthumous heir—*must be a party to any proceedings against his lands.* A proceeding against the lands of a decedent, though regular in every other respect, will be void if a posthumous heir be afterward born to him, such heir not being a party thereto.

2.  So, where the lands of a testator are charged with his debts by his will as well as by law, and the legatee under the will dies, and the creditors of the testator file a bill in chancery to enforce their lien against said lands, and bring into court as defendants the executor of the testator, and all the then heirs of the legatee, he being without issue, and obtain a decree for the sale of the lands, and the lands are sold, and it afterward appears that a posthumous heir had been born to the legatee after said decree was rendered, whereby the former heirs of the legatee ceased to be his heirs, though that fact was not known in this State at the time of the sale, then, since the real heir was not a party to the proceeding in which the decree was rendered, it was void as to the heir, and, being void as to him, the purchasers at that sale took no title.

3.  And where, in such case, a bill of revivor was filed and the new heir was made a party thereto and did not impeach the former decree, it was held to be a charge upon the property inherited by him as heir of the devisee, and to be binding upon him so far as it fixed and adjusted the indebtedness of the testator who devised the property to his father.

4.  And where, in such a case, previous to the bill of revivor, but subsequent to the former sale, the same lands had been sold by the administrator of the devisee to pay his debts, the purchasers at that sale took the title to the lands, but took it subject to a lien for the indebtedness of the testator.

5.  Because, at a sale by an administrator, the doctrine of *caveat emptor* applies, and purchasers there acquire the title with all the incumbrances to which it is liable.

6.  And in the foregoing case, since the proceedings by the creditors were a matter of record in the county where the lands were situate, the purchasers at the administrator's sale were chargeable with notice that that debt had been ascertained and found against the estate.

* This case was argued at the January Term, 1864, but was not published in the reports of that term, by reason of its being held under consideration upon a petition for a re-hearing.

Appeal from the Circuit Court of Morgan county; the Hon. David M. Woodson, Judge, presiding.

This is a controversy between the creditors of Jesse McKee, and creditors of Jerome McKee, Sr., both deceased.

The appellants are creditors of Jesse McKee, and claim that the property belonged to him at the time of his death, and was subject to the lien of his creditors to pay his debts, before Jerome McKee, Sr., ever had any interest therein.

The appellees are creditors of Jerome McKee, Sr., and claim said property through the will of said Jesse, and through certain conveyances made to said Jerome, and also claim that from the facts in the record they had a right to sell said property to pay the debts of said Jerome, Sr.

Both sets of creditors have sold the property to satisfy their respective claims, and this is now a controversy between the purchasers at those different sales.

The following is a summary of those facts disclosed by the record which are made the basis of the opinion:

The land in controversy was patented to Jesse McKee. He died in December, 1838, being at the time of his death a resident of Naples, then in the county of Morgan, now in the county of Scott. He left a will which appears in full in *McConnel et al.* v. *Smith, Admr.* 23 Ill. 612.

In that will Jesse named his brother William executor. He caused the will to be admitted to probate in Morgan county, letters were issued to him and he took possession of all the property both real and personal, and proceeded to carry out the provisions of the will.

Those provisions were, that all his estate should be charged with the payment of his debts; the personal property to be first applied thereto, and the real estate last. The residue he devised in two equal portions, one to his wife, Jane, and the other to his nephew, Jerome McKee, Sr., who was the son of William McKee, the executor under the will.

All the debts of Jesse McKee seem to have been paid in due course of administration except one. When he died he was

indebted to Holoway W. Vansyckel, as successor of the firm of McConnel & Vansyckle, who were successors of the firm of McConnel, Ormsbee & Co. This debt was not paid by the administrator, although he recognized it as just, and from time to time promised to pay it.

Jane McKee, the widow of Jesse, was afterward married to one Hugh L. Sutphin.

Afterward, on the 1st day of January, 1848, Jane Sutphin and her husband released and assigned, by deed, all her interest in the lands of her late husband, a part of which is the land now in controversy, to Jerome McKee, Sr.

On the same day William McKee, as executor, made a quit-claim deed to Jerome, Sr., of all the lands of the estate. This deed recites that said Jerome had made a bond to said William, as executor, for $2,400, and said William is therein authorized to sell said land, but no sale was ever made under that authority. Said William was at the same time authorized by said Jerome to collect, compound and receive the debts due to the estate of Jesse, and account to him for the proceeds, free of charge, except for attorneys' and officers' fees.

By these two conveyances Jerome McKee, Sr., became the sole party in interest in the land in controversy. The creditors of Jesse claim that he then held it as devisee of Jesse, and subject to the lien of the debts of Jesse, under the will and the release of the widow. The creditors of Jerome, Sr., claim that he held as a purchaser from the executor of Jesse, for a valuable consideration, under the said quitclaim deed of the executor, and that it was not then charged with any lien for the debts of Jesse.

In the fall of 1848, Jerome McKee, Sr., was married in the State of Ohio, to one Isabel ———. He there died intestate, in April, 1849. He left, as his heirs at that time, his widow Isabel, his brother Samuel, and his father William. As before stated, his father, William McKee, was the executor of Jesse, to whom was patented the land in controversy.

After the death of said Jerome, and some time in July, 1849, McConnel and Vansyckel, exhibited their bill in chancery in

the Circuit Court of Scott county, to enforce their lien for their debt before mentioned, against the estate of the said Jesse. The parties defendant were William McKee, the executor of Jesse, Isabel the widow of Jerome, Sr., Samuel his brother, and William his father, who were all brought into court.

Upon the testimony, the court found the claim just and unpaid, and held that the land was properly chargeable with its payment. A decree was rendered that it be sold to satisfy said debt and costs, in default of payment after a day fixed. The land was accordingly sold November 19, 1849, by the master in chancery, and deed made to the purchasers, who went at once into possession.

It afterward appeared that on the 14th or 15th day of November, 1849, Isabel McKee, the widow of Jerome McKee, Sr., was delivered of a male child, somewhere in the State of Ohio, and that child was known as Jerome McKee, Jr., and was the posthumous heir of Jerome McKee, Sr.

In July, 1852, David A. Smith, one of the appellees herein, appeared before the Probate Court of Scott county, claiming to be a creditor of Jerome McKee, Sr. As such creditor, letters of administration were then issued to him upon the estate of Jerome, Sr. Proceedings were at once instituted by said Smith in the Probate Court of Scott county, as such administrator, and an order of said court was made in December, 1852, that the land in controversy, with other lands, be sold to pay certain debts of Jerome, Sr.

In February, 1853, Smith, as administrator, exhibited a bill in the Circuit Court of Scott county against McConnel and others of the appellants herein, reciting the foregoing facts and asking that the former order of sale in favor of McConnel and Vansyckel against the property as part of the estate of Jesse, be vacated and set aside. The Circuit Court dismissed the bill and this court affirmed its action. *Smith et al. v. McConnel et al.,* 17 Ill. 135.

Afterward, on the 12th of August, 1856, the land now in controversy was sold under the aforesaid order of Smith, to pay the debts of Jerome, Sr., and the appellees, Detrick,

Chambers and Abbott, became the purchasers.   They gave their notes in payment, with a condition in the notes that the same should not be paid if it should be made to appear that any other persons had a better title to the lands.

Detrick then brought suit in ejectment against Mygatt and others of the appellants, in the Circuit Court of Scott county, claiming a portion of said land as a purchaser under said sale of Smith.   The court below found for the defendants.   At the December Term, 1857, the Supreme Court reversed the judgment, and held that as the posthumous child was not a party in the proceedings when the decree of McConnel and Vansyckel was rendered, his rights were not thereby affected.   *Detrick* v. *Mygatt et al.*, 19 Ill. 146.   Four other ejectment cases of like character were disposed of in the same way.

The original bill in this case was filed in the Circuit Court of Scott county, October 5, 1858.   The complainants recite the foregoing facts relating to the origin and history of their claims, and then allege that they, being owners in fee, by purchase in good faith, for a valuable consideration, in the manner above recited, were disturbed in their possession by the defendants. The facts relating to the origin and history of the claim of the defendants are then set out, and there are allegations that defendants have made the pretended existence of a posthumous heir to Jerome McKee, Sr., the basis of all said proceedings, all being a conspiracy by the defendants and others, to use the name of the posthumous child aforesaid, to harass and oppress the complainants.

The prayer of the bill was that it might be a bill of peace for the complainants, as purchasers at the sale under the decree of McConnel and Vansyckel, against all persons: therefore, that it might operate as a bill of revivor in their favor, and against the said posthumous heir, if there was one, so as to make him a party to the original decree of McConnel and Vansyckel against the land; that the sale by Smith, as administrator, to Detrick, Chambers and Abbott, be set aside; that complainants be quieted in their title and possession; that there be a temporary injunction to stay all further proceedings in all

said suits in ejectment until the final hearing of this bill, and that on such final hearing, all said suits and all others of similar character relating to any of said lands be perpetually enjoined.

The defendants answered, and the cause was argued and sub-submitted to the court below, in June, 1859. Afterward, October 12, 1859, defendants were allowed to introduce as testimony to prove the birth of said child, an old deposition taken in 1854, in another case and between different parties, where different questions were presented.

The court dismissed the bill and decreed the land to the defendants, by way of specific relief under their answer, refused the injunction, ordered that writs of possession issue in behalf of the plaintiffs in all the ejectment cases ; that the defendants in ejectment pay the cost thereof, and dismiss the bill in this case at the cost of the complainants. The case was then taken to the Supreme Court, and an opinion therein was delivered at the January Term, 1860. *McConnel et al.* v. *Smith, Administrator, et al.*, 23 Ill. 611. By this opinion it is held that the bill was properly dismissed at complainants' costs, but all the rest of the decree is reversed.

January 29, 1861, M. McConnel sued out of the County Court of Morgan county, where the will of Jesse McKee had formerly been admitted to probate, letters of administration to him, to administer upon said estate, the original executor, William McKee, being dead.

Afterward, at the January Term, 1862, on a rehearing of the same case, the decision in 23 Ill. 611, was reversed. It was then decided that the deposition above mentioned had been improperly admitted. The decree of the court below was all reversed. The cause was remanded with instructions to give parties leave to amend their several pleadings, and to direct an issue out of chancery to try the fact of the birth of the posthumous child aforesaid. Said posthumous heir, if there was one, was then to be permitted to make his answer or cross-bill to impeach the original decree in favor of McConnel and Vansyckel against said land.

In pursuance of that opinion an amended bill herein was filed September 26, 1862, by Murray McConnel, in his own behalf individually, in the Circuit Court of Morgan county, to which the cause had been taken on change of venue by consent. The same day was filed a bill of interpleader by M. McConnel, as administrator of Jesse McKee, and by Eli Mygatt and George Mygatt, complainants, against David A. Smith and the other appellees herein. The bills set out the foregoing state of facts. The prayer of the first bill was that if the original sale under the decree of McConnel and Vansyckel should be declared void, said land should still be held subject to the debt specified in that decree, and again sold to reimburse the purchasers at that sale for the moneys by them there expended. The prayer in the bill of interpleader was to the same effect, but also asked that Smith should be made to account for the proceeds of lands sold by him as administrator of Jerome, Sr.

To these bills the defendants all filed their answers; most of them also filed cross-bills, asking for relief as to them on the state of facts already presented. It was stipulated by the parties that the finding of the court below on the question of whether Jerome McKee, Jr., was the posthumous heir of Jerome McKee, Sr., deceased, should be final. The court found that he was.

The cause came on for a final hearing in the Morgan Circuit Court, in April, 1863. The court decreed as follows: That the original bill and all the amended bills, and all the cross-bills except those of Chambers and Detrick, be dismissed; that John Chambers was the owner of the real estate claimed by him under the sale of Smith as the administrator of Jerome, Sr.; that Jacob H. Detrick was in like manner owner in fee of the real estate claimed by him under a purchase at the same sale, and that Smith, Chambers and Detrick recover their costs in this case, and in the five ejectment cases, from the complainants in the original bill, and have execution therefor. Leave was given to McConnel to appeal from that decree, and this appeal was accordingly taken to the January Term, 1864, of the Supreme Court. The errors assigned are:

1. In dismissing the original and amended bills of the complainants.

2. In granting a decree in favor of Chambers and Detrick.

Mr. Murray McConnel, for himself and the other appellants.

Mr. David A. Smith, for himself and the other appellees.

Mr. Chief Justice Walker delivered the opinion of the Court:

It appears that the lands involved in this controversy belonged to Jesse McKee in his life-time. At his death he made his will, by which he charged all of his estate, the personal property first, and the real estate last, with the payment of his debts, and the residue he devised and bequeathed equally to his wife and his nephew Jerome McKee. Letters were granted upon the will, and the debts seem to have been paid in due course of administration, except one to Vansyckel, successor of Vansyckel and McConnel. A release was executed by his widow, who had intermarried with Hugh L. Sutphin, of this and other property of the estate to Jerome McKee, in consideration of a portion of the estate transferred to her, as her share of the residue. After this division was made, William McKee conveyed the property in controversy as executor of Jesse McKee to Jerome, for the consideration of twenty-four hundred dollars, for which the latter gave his bond, and authorized the former to sell the premises and to collect, compound and receive the debts due the estate, and to account to him for the proceeds free of charge except for attorneys' and officers' fees.

In the summer of 1849, McConnel and Vansyckel having learned that Jerome McKee had died, leaving no children, filed a bill against the executor of Jesse McKee, the widow, the father and brother of Jerome as his legal heirs, to establish their debt and to subject the lands to its payment. On the hearing the court found that the debt was unpaid, that this property belonged to the estate of Jesse McKee, decreed its

payment by a day named, and in default of such payment, that this property be sold. The money was not paid, and the property was sold by the master, and the sale was approved by the court.

In 1852, defendant Smith, claiming to be a creditor of Jerome McKee, deceased, took out letters of administration on his estate. He claimed that this property belonged to his estate, and was liable for the payment of his debts. He applied for and obtained an order of the court for their sale for the payment of Jerome's debts, and he proceeded to sell the lands under that order, and defendants Detrick and Chambers became the purchasers, giving their notes, with a condition that the same should not be paid if it should be made to appear that any other person has a better title to the lands.

The purchasers under defendant Smith's sale instituted ejectment suits against Ely Mygatt, Murray McConnel and Green Mygatt who derive their title under the master's sale of these premises, to satisfy the decree in favor of McConnel and Vansyckel. This bill was exhibited to enjoin these ejectment suits. A temporary injunction was allowed. After the decree in favor of McConnel and Vansyckel was rendered, the widow of Jerome McKee, in the month of November, 1849, gave birth to a male child who is also named Jerome McKee. Prior to the last trial of the cause in the court below an amended bill was filed, to revive the decree in favor of McConnel and Vansyckel, to again subject the land to a sale under the decree in case it should appear that Jerome McKee, Jr., was a posthumous heir of Jerome, Sr. On the trial below, the court dismissed the original, amended and cross-bills, and found that Chambers and Detrich were the owners in fee simple of the premises, and awarded a writ of possession. The cause is brought to this court by appeal to reverse that decree.

In the court below the parties stipulated that the finding in that court on the question of whether Jerome McKee, Jr., was the posthumous child of Jerome McKee, deceased, be final. As it was there found that he was, the case, as it now comes here, is freed from that question

It appearing that Jerome McKee, Jr., who inherited the property from his father, was not a party to the bill of McConnel and Vansyckel, to subject the land to the payment of their debt due from Jesse McKee's estate, his title was not affected by that proceeding. This court has repeatedly held, when this case has been previously before us, that the title passed to him unaffected by that decree. And we are satisfied with that conclusion, and are not disposed to again discuss that question, but shall treat it as settled and placed at rest.

But he is made a party to this proceeding, and the question presents itself whether he is *prima facie* bound by that decree, in so far as it adjusts and finds the indebtedness of the devisor of his father from whom he inherits this property. That the decree was conclusive upon the executor and the other parties to the suit, there can be no question. It is equally true, that it is, until reversed, absolutely binding against the personal assets of the estate. And it is also held to be *prima facie* binding upon the heir. The executor was the only necessary party to a proceeding to charge the estate with the allowance of such a claim, and to avoid its effect as a charge upon property held by the heir or devisee, it is necessary that it should be impeached by them. In this case no such effort has been made.

But it is insisted that Jerome, Jr., did not inherit the property from his father as devisee, but as a purchaser for a valuable consideration. If it be true that the father held by purchase, then there can be no pretense that defendant, Jerome McKee, inherited it with this charge annexed, or that the purchasers at the sale of his father's administrator acquired the title subject to such a burden. Then, did Jerome McKee, Sr., hold these premises as a devisee or as a *bona fide* purchaser for a valuable consideration? We feel that we may safely conclude, that at the time Jesse McKee's widow and his executor conveyed to Jerome McKee, deceased, it was supposed by the parties that the estate was finally settled. This, we think, appears from the fact that a division of the property seems to have been made between the devisees, and the further fact that Jerome,

deceased, authorized the executor to settle, collect or compound the debts of the estate, and to pay the money to him free of charge, except attorneys' and officers' fees. It is true that the deed or instrument executed by both the executor and Jerome, Sr., purports to convey the property to the latter for the consideration of twenty-four hundred dollars, for which the latter had given his bond. Now, if the estate was indebted, why authorize the executor to collect the debts and pay them to him instead of the creditors? Or why convey to Mrs. Sutphin her portion of the estate, and Jerome pay perhaps a full consideration for his part? It is not reasonable to suppose that such was the case.

It is more rational to conclude that the bond referred to in the deed is that required by the one hundred and twenty-ninth section of the statute of wills, which requires the legatees or distributees to give a bond to refund their proportion of the fund, in case it shall become necessary to do so for the payment of debts of the estate, before they are entitled to receive bequests or shares of the estate. We then conclude that this deed was made by the executor to vest in Jerome his share of the estate, and not as a sale to obtain funds for the payment of debts. It then follows, that he took this property charged with the incumbrance of any debts the estate still owed, McConnel and Vansyckel's included. And, as the property descended to Jerome, Jr., and he took as heir, and not as a purchaser, it vested in him in the same situation.

We then find that this property was chargeable with this debt at the time defendant Smith sold as the administrator of Jerome McKee, deceased. Then did the purchasers at his sale acquire the title freed from, or subject to, this incumbrance? As a general rule, subject, it may be, to some exceptions, a purchaser at an administrator's sale acquires it with all the incumbrances to which it is liable. The doctrine of *caveat emptor* applies. If the purchasers at this sale examined the records, and we must presume that they did, they found that the title was derived through the will of Jesse McKee, and that it charged this property with the payment of his debts.

19—39th Ill.

In tracing the title, they found that the title passed into Jerome McKee, the devisee, subject to the same charge, and that by his death and by the subsequent birth of his son, the title passed to him in the same condition. The proceedings in chancery in the case of McConnel and Vansyckel, against the executor and supposed heirs of Jerome, deceased, were a matter of public record in the county in which the lands were situated, and were notice to the world. It is hardly probable that they could have became purchasers without being actually informed of that whole proceeding. At any rate they are chargeable with notice, that the debt had been there ascertained and found against the estate. And knowing, as it must be presumed they did, that the will charged this property with the payment of this debt, and having such notice, they purchased, and no doubt acquired the title subject to the incumbrance. That they had notice may be inferred from the unusual condition inserted in their notes.

But inasmuch as Jerome, Jr., was not a party to McConnel and Vansyckel's bill, the purchasers under that decree acquired no title. Though, as by it, their claim against the estate and their lien against this property was established, and inasmuch as Chambers and Detrick purchased subject to that lien, and inasmuch as the justness of that debt, as allowed, has not been impeached by Jerome, Jr., or the other defendants, the plaintiffs in error have a right to relief. McConnel and Vansyckel have the right to enforce their debt against this property. And all the parties in interest being before the court, a decree should have been rendered, requiring it to be paid, and in default of such payment, that the property should be sold for its satisfaction.

The decree of the court below is therefore reversed, and the cause is remanded, with instructions to the court below to enter a decree dissolving the injunction, setting aside the sale by the master under the decree in favor of McConnel and Vansyckel, and that Detrick and Chambers pay the amount of money found to be due from the estate of Jesse McKee, deceased, to McConnel and Vansyckel, together with interest to the date

of the decree in this case, within ninety days; and in default of such payment, that the master in chancery sell all or so much of the premises as may be necessary to pay the same, after giving sixty days' notice, by publication in a newspaper published in the county in which the lands are situated, and by posting up written or printed notices in the neighborhood of the lands; that the sale be at public vendue to the highest bidder for cash, at the door of the court-house of the county in which the lands are situated; that the master execute deeds to the purchasers; that complainants McConnel, Vansyckel, Ely and George Mygatt pay one-half of the costs of this suit and of the ejectment suits, and that the other parties pay the other half of the costs.

*Decree reversed.*