CAROLINE L. BISHOP *et al.*

*v.*

MARY O'CONNER *et al.*

1. JUDICIAL SALE—*rule of caveat emptor applies.* It is a general rule, subject to few, if any, exceptions, unless it be when a fraud is practiced upon the purchaser, that the doctrine of *caveat emptor* applies in all judicial sales, for the reason that the officer selling has no power to warrant title or impose terms or conditions on the sale, beyond those required by law, and because the purchaser is presumed to have examined the title and to know what he is acquiring by his purchase.

2. SAME—*officer selling exercises only a naked power.* It is the policy of the law to invest the sheriff, master in chancery or administrator, in making sales of real estate, with only a mere naked power to sell such title as the debtor or deceased had, without warranty, or any terms, except those imposed by law. Hence, a purchaser at such sale takes the risk of the title, and the validity of the proceeding under which the sale is made, upon himself.

3. SUBROGATION—*in what cases it applies.* The doctrine of subrogation in equity is confined to the relation of principal and surety, and guarantors, and to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and to cases of insurers paying losses. In the first class named, the doctrine is applied to avoid a multiplicity of suits. In the second class, the person discharging the superior lien is treated as its purchaser or assignee, unless the facts show it was intended as an absolute payment. In the last class, the insurer is subrogated to the remedies of the assured, upon the ground that upon payment he is entitled to the property insured as being abandoned by the assured.

432                     BISHOP *et al. v.* O'CONNER *et al.*          [Sept. T.

Opinion of the Court.

4. SAME—*of purchaser at administrator's sale of land to claims paid by the sale.* A purchaser of land at an administrator's sale is not entitled in equity to be subrogated to the claims of creditors which have been paid by the purchase money, where the title fails for a want of jurisdiction in the court ordering the sale over the persons of the heirs.

5. Where the purchase money at such a sale has been applied in removing incumbrances or charges upon the lands of an estate, and the title fails, it has been held that the purchaser may be subrogated to the lien so discharged by his payment; but claims against an estate are not regarded as such a charge upon the real estate. The land may be subjected to their payment upon a deficiency of personal assets, but the administrator takes, in such case, only a power, which must be exercised within the period of seven years, unless a satisfactory excuse can be shown for the delay.

6. A volunteer, or any person, without the consent of the heirs of an estate, can not, by the payment of simple debts against their ancestor, recover the same from the heirs because they have inherited land from the ancestor. Such a person can neither sue the heirs nor charge their lands thus inherited for its repayment, for the reason that, except in the purchase of commercial paper, one person can not make another his debtor without his consent, either at law or in equity.

7. DESCENT—*whether lands by descent are charged with ancestor's debts.* It is not accurate to say that lands descending to heirs are charged with the debts of the ancestor. They are only liable to be charged with their payment upon a deficiency of personal assets, and this right may be lost by delay.

8. LIMITATION—*of application to sell lands of a deceased person to pay debts.* The period of seven years is adopted in this State as the limit within which proceedings may be instituted to sell lands by administrators or creditors of an estate to pay debts, unless special circumstances are shown explaining and justifying the delay.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HOWE & RUSSELL, for the appellants.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

A bill was filed by appellants, in the Superior Court of Cook county, against appellees. It alleges that a petition

was filed by the administratrix of Charles O'Conner, deceased, in August, 1858, in the county court, asking leave to sell certain real estate which belonged to deceased in his lifetime, to pay the debts of his estate. A decree was obtained, and a sale was made to the brother of Caroline L. Bishop, in 1859, to be held by him in trust for her, and it was afterwards conveyed to her. The proceedings under which this sale was made, were, after protracted litigation, held to be void, for the want of such service on two of the heirs as to give the court jurisdiction over their persons, and the other heir, not then having been born, was not, before or after its birth, made a party.

It is alleged that the widow applied the greater part of the money to the payment of the debts which had been proved up against the estate; that if any portion of it was not so applied, the administratrix held it as guardian for the heirs or used it for their support; that about half of the debts were paid by the proceeds of the sale or otherwise; that there was a balance of about $5000 which remained unpaid, some of which has been assigned to appellants and Jabez K. Botsford.

The bill prays that complainants be subrogated to the rights held by the creditors, so far as they were paid from the proceeds of the land; that the heirs be charged with the money spent in their support; that the unpaid debts of the estate be decreed to be a charge on the land; that the court take general charge of the administration of the estate, and settle it according to the equities of the parties.

A demurrer was filed and sustained to the bill, which was dismissed, and the record is brought to this court on appeal, and various errors are assigned.

It is urged that a purchaser at an administrator's sale, which fails to pass title, may be subrogated to the position occupied by the creditors, whose debts were paid out of the money arising from the sale; and that inasmuch as his money paid the debts, he should have the same right in equity to have the land sold for the purpose of having his money

28—69TH ILL.

refunded, as the creditors had to have it sold for the payment of their debts; that such a purchaser should occupy their position, and should be treated as a creditor.

It is a general rule, subject to few, if any, exceptions, unless it be where a fraud is practiced upon the purchaser at a judicial sale, that the doctrine of *caveat emptor* applies. In our researches, no case has been found where a bill has been sustained to enable such a purchaser to recover back the money paid by him for a defective title, or where, by his purchase, he acquired no title. The officer of the law can only sell such title as the debtor has, and he has no power to warrant the title, or impose terms or conditions on the sale beyond those which are required by the law; and the same is true of administrators, who sell under a license from the court. They must pursue the requirements of the decree and the law, and can do no act or make any agreement that will charge the heirs.

In all judicial sales the presumption is, that as the rule *caveat emptor* applies, the purchaser will examine the title with the same care that a person does who receives a conveyance of land by a simple quit-claim deed. When he knows there are no covenants to resort to in case he acquires no title, the most careless, saying nothing of the prudent, would look to the title and see that it was good, before becoming a purchaser at such a sale. Or if not, he must expect to procure it on such terms as he might sell the claim for a profit. As well might a person purchasing by quit-claim deed file a bill to be reimbursed on the failure of title, as where the purchase is made at a sale by an administrator. Both kinds of purchase depend upon the same rule.

It is the policy of the law to only invest a sheriff, master in chancery, or administrator, in making sales of real estate, with a mere naked power to sell such title as the debtor or deceased had, without warranty, or any terms except those imposed by the law. They are the mere instruments of the law to pass such, and only such, title as was held by the debtor or intes-

tate. Then, if the purchaser in this case observed but ordinary prudence, he had the title, and, as a part of it, the proceedings under which he purchased, examined, and whether so or not, we must presume that he determined to take the risk of the title upon himself. We have no hesitation in saying that the rule of *caveat emptor* applies in this case with its full force.

But it is urged, that as the lands of a deceased debtor may be made liable to the payment of the debts, although they descend to the heirs, equity should treat the money paid on the purchase, and which was applied to the payment of debts, or expended in support of the heirs, as a charge upon the land, and subject it to the refunding of the purchase money. To this there seem to be two answers. If the doctrine of *caveat emptor* applies, the rule must be the same in equity as at law; and that the claim is stale, and should not be regarded in equity any more than at law. If this is treated as money paid for the use of the heirs, then an action at law would be barred in five years from the time of its payment. And, as a general rule, equity follows the law as to the bar of the statute. But we are not prepared to hold that even if a volunteer, or person without the consent of the heirs, (who, being minors, could not consent,) should pay debts against their ancestor, they could recover from them because they had inherited lands from him, or that such volunteer could either sue the heirs or charge the lands thus inherited for its repayment. It is a familiar rule that, with the exception of the purchase of commercial paper, one person can not make another his debtor, either in law or equity, without his consent. And in this case there could be no implied agreement on the part of the heirs to refund the money if the purchaser failed to acquire title, nor does the law imply such a promise against them.

In *Wilkes* v. *Harper*, 1 N. Y. R. 593, it was held, where a part of the legatees paid off the debts of the estate, and then sought to subject the land of one who paid nothing, to satisfy his proportion of the indebtedness thus paid, that the complainants were separately liable for their respective propor-

tions, and the payment of the share of one by the other legatees, if at his request, would have been money advanced to his use, but if voluntarily made, without his assent, it would impose no obligation, either legal or equitable, upon him or his representatives. This case goes farther than it should if the debts were a lien upon the land that could not be removed in parts, as in such case the whole of the debts would have to be removed before the land of either legatee would have been discharged. But the case of *Now'an* v. *Coit*, 1 Ham. 519, seems to be a case in point, as there the court refused to charge the land or hold the heirs liable for the money paid by the purchaser at the sale, but applied the doctrine of *caveat emptor* in its broadest sense.

It is, however, said, that the law charges the land which passes to devisees or descends to heirs with the payment of the debts, where the personal property as the primary fund is insufficient for the purpose. It is not accurate to say that the lands are charged, but rather that they are liable to be charged, as the law has declared that the lands may be subjected to the payment of such debts, and has prescribed the manner and the time within which it may be done. If creditors desire to enforce their claims against real estate, it must be done in a reasonable time. In the case of *McCoy* v. *Morrow*, 18 Ill. 519, it was intimated that in analogy to the lien of judgments on real estate, and the bar of entries into lands after seven years, that period would be regarded as a reasonable time; and we are fully prepared to hold that such a period should be adopted as the limit within which proceedings should be instituted to enforce the lien, unless special circumstances are shown explaining and justifying the delay. See *Rosenthal* v. *Renick*, 44 Ill. 202, which has been subsequently followed in *Moore et al.* v. *Ellsworth et al.* 51 Ill. 308. Here was a case where the claims had been allowed nearly double that period, when there was nothing to prevent a resort to the county court to compel the administrator to proceed to the subjection of the

land to the payment of the unsatisfied debts, which are now claimed to have been assigned to appellants.

But even if there was any validity to the claim for the money paid on the purchase, and it were not barred, the doctrine of subrogation would not apply. That doctrine is confined to the relation of principal and surety, and guarantors, or to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and in cases of insurers paying losses. In the first class of these cases, the doctrine is applied to prevent a multiplicity of suits. And in the second class of cases the person discharging the superior lien is treated as its purchaser or assignee, unless the facts show it was intended as an absolute payment. In case of insurers, the law proceeds to subrogate the insurer who has paid the loss, upon the ground that where he has done so he is entitled to the thing insured, as being abandoned by the assured, including every means or remedy for its recovery, or for recovering compensation for its loss by those who held the insurance, whose rights pass to and vest in the insurer, by implication of law, even where no act is done to transfer the right.

These seem to be the only character of cases in which the doctrine is applied. And whilst cases are innumerable that may arise under these heads of subrogation, the jurisdiction of courts in the application of this doctrine is clearly limited and defined. To apply the doctrine in this case would be to add another class of cases to the jurisdiction of courts of equity, and would be to extend it beyond well defined limits. From doing so we are prohibited, and when the legislative department shall deem it for the interest of society they will doubtless apply the remedy. We must adhere to the known and recognized rules that have always in the past governed courts of equity.

It is, however, contended that the doctrine, if not announced, is sustained by a number of cases to which we have been referred. In the case of *Bright* v. *Boyd*, 1 Story R. 478, 2

438      BISHOP *et al. v.* O'CONNER *et al.*     [Sept. T.

Opinion of the Court.

Story R. 607, the bill was for compensation for improvements placed upon lands purchased in good faith, when the title had failed. There was no subrogation in that case. The purchaser had made the improvements and claimed that the owner of the land should pay for them, and he was decreed payment. In that case he was substituted to the rights of no other person. He held the claim in his own right, and had paid no other person's debt, or the lien upon any property, or discharged any other person from liability.

The case of *Valle's Heirs* v. *Fleming's Heirs*, 29 Mo. 152, approaches more nearly a subrogation than that of *Bright* v. *Boyd, supra,* although it is based on the latter named case. But in that case the party purchased land at an administrator's sale which was subject to a mortgage, and the money was applied to its satisfaction, and the title derived under the sale failed, and the purchaser was subrogated to the rights of the mortgagee. We shall not stop to inquire whether the purchaser from the administrator was, by the court, properly treated as the assignee of the mortgage simply because the money paid by him was applied to satisfy the mortgage. The decision was by a divided court, and its correctness is doubted. But be that as it may, that case is, in its facts, entirely different from this, nor do we see, even if it establishes a principle, that this case could fall within the rule.

The case of *Nowlan* v. *Coit, supra,* was where the heirs were required to pay the taxes advanced by the vendee, but they were not required to repay the purchase money. The amount paid to discharge the taxes against the land was decreed because such payment preserved the estate from sale, and no doubt relieved the heirs from as great, or even a greater, burthen in redeeming. But this case only gave compensation, and there was no subrogation or grounds for it.

In the case of *Hudgin* v. *Hudgin*, 6 Gratt. 320, the testator expressly charged the land with the payment of debts. And these debts having been paid by the purchase money arising

from a sale by the executors, the heirs were required to refund to the purchaser the money he had paid the executor, and which had been applied to remove the incumbrance. That case proceeded upon the ground that his money having been applied to release the land from the incumbrance, he should, as was held in the case of *Valle's Heirs* v. *Fleming's Heirs, supra,* be treated as the assignee of the incumbrance. If that case is to be regarded as announcing a correct rule of law, it differs essentially from the case at bar, and does not control it.

It is supposed that the case of *Kinney* v. *Knœbel,* 51 Ill. 112, must control this case in principle if not on the facts. This we think is a misconception of the principles upon which that case is based. There, the heirs filed a bill to set aside an illegal sale made by a sheriff. The subrogation in that case was placed upon the ground, that it was a bill filed by the heirs to set aside the sale, and to be permitted to redeem the land from Morrison's purchase. And it being a fundamental rule in equity, that where its aid is asked, the court will never grant relief, except on equitable terms, and inasmuch as complainants offered to redeem, the court would permit them to do so only upon doing full equity. Again, in that case, Morrison only agreed to become a purchaser upon the condition that he could control and use the debts against the estate for paying his bid, and he made the arrangement and used the debts in paying for his purchase. These two features of that case clearly distinguish it from the case at bar, and has no controlling effect in its decision.

We are also referred to the case of *McConnel* v. *Smith,* 39 Ill. 279, as an authority in favor of the position of appellants. In that case the property which descended to the heir was, by the will of his ancestor, specifically charged with the payment of debts, and it was held that as it was so charged, it should be sold for the payment of those debts. Such a charge, like a mortgage, follows the land, and it must be held liable in the hands of heirs or devisees. But in this case we have

seen that there was no such charge, and hence that does not apply as an authority in this case.

Perceiving no error in sustaining the demurrer to the bill, the decree must be affirmed.

*Decree affirmed.*