## Thomas W. Prindiville et al. v. Isabella Curran et al.

### Gen. No. 13,145.

1. SUPPLEMENTAL BILL—*when filing of, proper.* A supplemental bill is proper when facts have occurred since the filing of the original bill which it is necessary to bring to the view of the court, and, in such case, the supplemental bill is, in effect, an amendment of the original bill.

2. FRAUD—*when charge of, with respect to delivery of deed established.* Fraud is established where it is shown that a deed which was filled in over a blank signature and acknowledged, was delivered as a deed duly executed and regularly acknowledged.

3. EQUITY—*when has jurisdiction to set aside satisfaction of judgment obtained by fraud.* A court of equity has jurisdiction to set aside a satisfaction of a judgment obtained by fraud where its jurisdiction has been successfully invoked upon another ground.

4. NECESSARY PARTY—*who is, to bill to set aside satisfaction of judgment.* The holder of the legal title to a judgment, the satisfaction of which is sought to be set aside, is not only a proper, but a necessary party.

Bill in chancery. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded, with directions. Opinion filed April 4, 1907.

**Statement by the Court.** December 12, 1905, Thomas W. Prindiville filed a bill of complaint against Isabella Curran and Richard Curran, her husband, averring, in substance, that May 1, 1905, the defendants executed to complainant their warranty deed conveying lots 1, 4, 5 and 6, in block 16, in the Circuit Court partition of the S. E. ¼ of sec. 31, town 38 N., R. 14 east of the 3rd p. m., in the city of Chicago, Cook county, Illinois; that the scrivener, in describing the property intended to be conveyed, made a mistake in writing in said description "range 14" instead of range 15; that the consideration for said conveyance was the entering of record of satisfaction in full of a judgment in attachment entered in this court May 1,

1905, for the sum of $1,792.41, in a suit in which Thomas R. Bishop was plaintiff and Richard Curran was defendant, wherein the attachment was levied on the aforesaid lots, as the property of Richard Curran, and the dismissal of a creditor's bill, wherein said Bishop was complainant and said Isabella and Richard Curran were defendants, to subject said above described lots and other lots to the payment of said judgment in attachment, as the property of the defendant Richard Curran; that complainant has requested the defendants to correct said mistake, but they have refused to do so. The alleged correct description of the premises and the deed sought to be reformed are set out in the bill. Correction of the alleged mistake is prayed for and for general relief.

January 29, 1906, the defendants filed a joint plea, verified by the oath of Richard Curran, in which it is averred that Prindiville is a mere naked trustee of the property described in the bill, and holds the title in trust for Bishop or other persons unknown to the defendants.

February 14, 1906, the bill was amended by leave of the court, by making Thomas R. Bishop, Edward J. McArdle and Patrick L. McArdle co-complainants, and averring that the McArdles were Bishop's attorneys, and that Edward J. McArdle negotiated the settlement, in pursuance of which the deed in question was executed, and that complainant Prindiville, in the absence of Edward J. McArdle, accepted the deed believing the description of the premises to be correct, and entered satisfaction of said judgment and dismissed said creditor's bill, and thereafter, and before the discovery of said mistake, said Prindiville, by the request of said Bishop and said McArdle, made a declaration of trust that he held title in trust for said Bishop and said McArdles. On the same day, February 14, 1906 (erroneously printed Jan. 29th in the abstract), the complainants filed a supplemental bill, averring that since the filing of the original bill, and

discovery of the mistake in the bill, the complainants, Prindiville and the McArdles, acknowledging that the mistake was not Bishop's fault, at his, Bishop's, request, paid him in full for his interest in the lots and judgment, and he, in consideration thereof, conveyed all his interest in said lots and judgment to complainant Prindiville, and has no further interest therein.

February 19, 1906, the defendants demurred to the bill, the demurrer was overruled, and, March 5, 1906, they filed their joint and several answers, denying that they executed the warranty deed, and that they acknowledged the same as averred, and that the scrivener made a mistake, and that it was intended by them to convey premises, as alleged in the bill, etc. Exceptions were filed to the answer, and, March 8, 1906, the court entered an order requiring each of the defendants to answer specifically, on oath, each and every allegation of the amended bill, within ten days from date of order, and giving leave to complainants to file *instanter* interrogatories to the defendants, and requiring each of the defendants to answer said interrogatories, on oath, within ten days from date of order. By leave of court additional interrogatories were filed March 22, and May 1, 1906, all of which were answered by each of the defendants on oath.

March 5, 1906, the defendants filed a joint and several answer to the supplemental bill; and, March 17, 1906, the defendants filed separate answers to the amended bill. Isabella Curran, in her answer, does not admit that she executed the warranty deed, and neither admits nor denies any other averment in the amended bill. On exceptions being sustained to her answer, she filed a further answer May 12, 1906, stating, in substance, that she believes the scrivener made a mistake in writing the deed, but denies that she ever executed or acknowledged it, or that she intended to convey any lot by it, or that she ever contracted to convey said lots to Prindiville.

Richard Curran, in his answer to the amended bill,

avers, in substance, that the signature "Isabella Curran" to the deed to Prindiville is the genuine signature of Isabella Curran, but that the deed was blank when she signed, and was afterward filled in, and that he believes she never acknowledged it; that he also signed the deed in blank and before it was filled in, and, to his best recollection, he never acknowledged it. He neither admits nor denies the following: that the scrivener made a mistake; that the correct legal description is set forth in the bill; the consideration for the deed, and certain matters alleged in paragraph 3½ of the bill. He admits request to him to make a correct deed. On exceptions being sustained to his answer, he filed an additional answer May 12, 1906, in which he states that he believes the scrivener made a mistake in writing the deed, without first consulting Isabella Curran about it, and believes he executed the deed, and believes that Isabella had no intention as to the deed, and believes that neither individually nor jointly with Isabella did he contract to convey to Prindiville the lots described in the bill.

By leave of court, the complainants, May 24, 1906, filed additional amendments to the bill. These amendments are quite lengthy. In them it is averred, in substance, that the title of the attachment suit referred to in the bill, is Thomas R. Bishop v. Richard Curran, and that December 31, 1904, an attachment writ issued in said suit, and was levied by the sheriff on certain real property, as shown by his return to the writ, exhibit A, attached to bill, and, May 1, 1905, judgment was rendered in said suit, and execution was issued and levied by the sheriff on the property described in his return to the attachment writ.

While Isabella's signature to the deed is genuine, she by her sworn answers avers she believes she never sealed it, and denies that she acknowledged it, and believes she did not direct or authorize it to be filled in as a deed, and avers that she did not authorize its delivery to Prindiville, and believes she did not ratify

such delivery. Richard Curran's statements in his answers are then set out, and it is averred, in substance, that Richard Curran delivered the deed, falsely representing that it had been executed and acknowledged by Isabella Curran, and complainants, believing the same to be true, so charged, but complainants, having read the answers of the defendants, now aver that said deed is not the deed of Isabella Curran. By said false representation of Richard Curran, he obtained from complainant Bishop a satisfaction of the judgment in Bishop v. Curran, and said complainants caused said satisfaction to be entered, and complainants charged that said satisfaction was fraudulently obtained by said Richard Curran. Since said entry of satisfaction DeWit Taylor Kennard, who is made a party defendant hereto, obtained a decree against said Richard Curran for $16,000, and has filed a creditor's bill thereon against Isabella and Richard Curran and all parties becoming interested since said satisfaction. After receiving said deed, complainants, Prindiville and the McArdles, knowing the handwriting of Isabella Curran, redeemed said lots from tax sales, paying on said redemptions $37.47. New parties are added and further interrogatories, and the amendments conclude with the prayer that an account be had of the amount due on the judgment in Bishop v. Curran; that the satisfaction thereof be set aside, and that Bishop and his assignee have the same relief against the property levied on by the attachment and execution writs, as it said satisfaction of judgment had not been entered, etc.; that complainants' claims and Kennard's creditor's suit be consolidated, and that Isabella Curran be decreed to pay to complainants Prindiville and the McArdles said redemption money, or the sale of said lots be directed to satisfy said demand, and for general relief.

June 2, 1906, the defendants filed a general demurrer to the bill, as amended, which the court, June 11, 1906, sustained, and granted leave to complainants

to present amendments within two days.   June 16, 1906, the complainants presented amendments and moved for leave to file them, which motion was continued, and, June 19, 1906, the court denied the motion, and complainants moved that the order sustaining the demurrer be vacated, which motion was denied, and the complainants having elected to stand by their bill as amended, the court dismissed it for want of equity.   The amendments offered, and which the court refused permission to file, occupy seven closely printed pages of the abstract.   After referring to a creditor's bill and certain other documents which are not abstracted, it is averred that Richard Curran, for the purpose of securing a dismissal of said creditor's suit and Bishop's claim therein, and satisfaction of Bishop's judgment, represented to complainants that the title to said lots was in Isabella Curran, and was clear, and was guaranteed as being in her by the Chicago Title & Trust Co., and agreed with complainants, the McArdles, as the attorneys of Bishop, that they should dismiss said creditor's bill as to Bishop's claim, and enter satisfaction of said judgment in Bishop v. Curran, and that, in consideration thereof, he, Richard Curran, would deliver to complainant Prindiville a warranty deed executed by him and Isabella Curran, conveying title to said lots, unencumbered, for an expressed consideration of $18,000, etc.; and, in pursuance of said agreement the McArdles signed the stipulation to dismiss the creditor's bill as attorneys for all parties thereto, and also the satisfaction piece, and delivered said stipulation and satisfaction piece to complainant Prindiville, and said Richard Curran represented to complainants, the McArdles and Prindiville, that said deed was executed and acknowledged by Isabella Curran, and complainant Prindiville, confiding in said representations, delivered to said Chicago Title & Trust Co. said stipulation and satisfaction piece, and said company, acting as the agent of said defendants, the Currans, procured to be entered

in said creditor's suit an order dismissing the same, and an entry to be made on the judgment docket acknowledging satisfaction in full of the judgment in Bishop v. Curran.

Complainants are informed by Wm. C. Hill, formerly an agent of Richard Curran, and, on such information and belief thereof state, that said Hill filled in said deed over the signature of Isabella Curran, without her direction or approval, and by Richard Curran's request, and, also, at said Richard's request, said Hill attached thereto the notarial certificate appearing thereon, and that Isabella Curran did not acknowledge said deed before said Hill. The proposed amendments contain other averments, and conclude with an alternative prayer, viz: that the deed be corrected and decreed to be the deed of the defendants; but if the court should not decree it to be their deed, then that the satisfaction of judgment and the dismissal of the creditor's bill be set aside, and the judgment and creditor's bill restored and reinstated, and that the judgment be declared a lien on the interest of Richard Curran in the real property on which the execution issued on said judgment was levied. The creditor's bill referred to in the proposed amendments was filed by the Decorators' Supply Co. in aid of an execution, and avers that Richard Curran, for the purpose of defrauding his creditors, has put large and valuable parts of his real property in the names of his wife, Isabella, and others, describing said real property, which description includes the lots in question. Complainant Bishop was made a party defendant to the bill, and answered, setting up his judgment against Richard Curran, and filed a petition for leave to become a co-complainant.

McARDLE & McARDLE, for appellants.

EDWARD MAHER and ROBERT F. KOLB, for appellee, ISABELLA CURRAN.

MR. JUSTICE ADAMS delivered the opinion of the court.

The only brief or argument filed on this appeal for an appellee is that for Isabella Curran. The counsel for Isabella Curran state in their argument that they appear for her alone. If the bill as amended May 24, 1906, is a bill entitling the complainants, on sufficient proof, to relief as to the defendant Richard Curran it should not have been dismissed, even though it may not disclose any case for equitable interposition as against Isabella Curran. It will be only necessary to decide whether the demurrer to the bill, as amended May 24, 1906, should have been sustained and the bill dismissed, and whether permission should have been refused to file the amendments presented to the court June 16, 1906. It appears from the bill as amended, that Richard Curran in his answer to the original bill admitted that the deed was in blank when Isabella signed it, and was subsequently filled in, as a warranty deed from Isabella Curran and Richard Curran to the complainant Prindiville, and that she did not acknowledge it, and it also appears from the amended bill that Richard Curran, knowing that Isabella merely signed a blank form for a deed, and did not acknowledge the deed at any time, delivered the apparent deed to the complainant Prindiville, and falsely represented to him that it was made, executed and acknowledged by his wife, Isabella Curran, and that, by means of such delivery and false representation, he procured satisfaction of the judgment in Bishop v. Curran to be entered on the record. It further appears from the supplemental bill that after the filing of the original bill and the discovery of the mistake in the description of the premises in the apparent deed, Prindiville and the McArdles paid to Bishop, by his request, his judgment in the attachment suit against Richard Curran, and Bishop conveyed to complainant Prindiville, in consideration of such payment, his judgment against Curran and his interest in the lots in question.

A supplemental bill is proper when facts have occurred since the filing of the original bill which it is necessary to bring to the attention of the court, and, in such case, the supplemental bill is, in effect, an amendment of the original bill. Mix v. Beach, 46 Ill. 311, 314; Story on Eq. Pl., 9th ed., p. 295, sec. 332. Therefore, the new matter thus introduced is to be treated as an amendment of the original bill. The delivery of the apparent deed by Curran to Prindiville, for the purpose of procuring satisfaction of Bishop's judgment, he well knowing that it was not the deed of his wife and was not acknowledged by her, as it purported to be, was, of itself, a false representation and a gross fraud, and if Curran filled in the blank signed by Isabella Curran, or caused it to be filled in by another, proof of which is admissible under the averments of the amended bill, he was not only guilty of fraud, but of deliberate forgery. Wilson v. S. Park Commissioners, 70 Ill. 46; Langdon v. The People, 133 ib. 382; Hurd's Rev. Stats. 1905, p. 693, parag. 105.

It is contended that the complainants have a remedy at law, by applying to the court in which the judgment in Bishop v. Curran was rendered, to set aside the entry of satisfaction of that judgment. Conceding that the law court has power to set aside the entry of satisfaction on a proper showing, the complainants, before filing the original bill, were in no position to make such showing. Before that time all they knew was that, in the apparent warranty deed, there had been a mistake made in the description of the premises which it was intended to convey, in writing, "range 14" instead of range 15. They had no knowledge that the apparent deed was not the deed of Isabella Curran until the defendants were compelled, by order of the court, to answer specifically and under oath, the several allegations of the original bill, and the interrogatories propounded to them by the complainants. If complainants had applied to the law court to cancel the entry of satisfaction of the judgment, on the

ground of the mistake in the apparent deed, that court would probably have informed them that their remedy was in a court of equity for reformation of the deed, which court, having entertained the bill for that purpose, would retain it for cancellation of the entry of satisfaction and all other legitimate purposes. Manifestly, the complainants could not have procured from the defendants the information which they disclosed in this cause, reluctantly and under pressure, that the apparent deed was not, in law, a genuine deed.

The McArdles were the attorneys of Bishop, and as such were liable to him for negligence in matters entrusted to them by him, and, as we think, were liable for permitting the acceptance of a deed in which the premises intended to be conveyed were misdescribed. Prindiville, in accepting the deed, was acting as trustee for Bishop, and it was his duty as such to see that the premises intended to be conveyed were conveyed by proper description in the apparent deed, before causing satisfaction of the judgment to be entered on the record. Prindiville and the McArdles, believing themselves liable to Bishop for the mistake in the deed, and the entry of satisfaction of the judgment, paid Bishop, on his demand, the amount of said judgment, and, at the same time, Bishop assigned to Prindiville the judgment and his interest in the lots intended to be conveyed to Prindiville. Had they not paid Bishop on his demand they were certainly liable to be sued by him.

Prindiville and the McArdles claim that they are entitled to be subrogated to whatever rights Bishop had in respect to his judgment against Curran and the enforcement thereof, and, assuming the truth of the averments of the amended and supplemental bills, we think they are so entitled. They paid to Bishop in full the amount of his judgment, and took from him an assignment thereof, to Prindiville, as trustee for himself and the McArdles, and whatever interest he had in the lots, which interest, if the lots belonged to

Richard Curran, was at least a lien by virtue of the judgment and the execution issued in pursuance thereof. The evident intention was, that they, thereafter, should stand in Bishop's place in respect to the judgment and all means of enforcing payment of it.

In Home Savings Bank v. Bierstadt, 168 Ill. 618, the court say: "Subrogation, as a principle of equity jurisprudence is generally confined to the relation of principal and surety and guarantors, or to a case where a person is compelled to remove a superior title to that held by him in order to protect his own, and also to cases of insurers. The general principle of subrogation is confined and limited to these classes of cases. (Bishop v. O'Conner, 69 Ill. 431; Borders v. Hodges, 154 *id.* 498.) Whilst these general heads include the doctrine and principles of subrogation, that doctrine has been steadily extending and growing in importance and extent in its application to various subjects and classes of persons. This equitable principle is enforced solely for the accomplishment of substantial justice, where one has an equity to invoke which cannot injure an innocent person. The right of subrogation which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed legal subrogation, and exists only where included within those classes. But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien."

In Tradesman's Bldg. etc. Ass'n. v. Thompson, 32 N. J. Eq., 133, cited with approval in the Savings Bank case, *supra,* the gist of the opinion is thus stated

in the syllabus: "When a payment is made by a stranger to a debtor, in the expectation of being substituted in the place of the creditor, he is entitled to subrogation." We think it clear from the pleadings that not only did Prindiville and the McArdles expect to be substituted in the place of Bishop, but that this was the intention and understanding of both them and Bishop. See, also, Hough v. Aetna Ins. Co., 57 Ill. 318.

In Sheldon on Subrogation, p. 282, Sec. 245, the author says: "A payment made by one who was liable to be compelled to make it will not be regarded as made by a stranger, and will not extinguish the indebtedness of the party on whom rests the ultimate liability."

It must be borne in mind that when the money was paid to Bishop and he assigned his judgment, etc., as heretofore stated, neither he, nor Prindiville and the McArdles, had any reason to believe otherwise than that the apparent deed was a valid deed, except for the mistake in the description of the property. It is contended by counsel for Isabella Curran that Bishop was an unnecessary party to the bill as amended, and that the demurrer was properly sustained on that ground. We cannot concur in this view. Bishop was made a party complainant February 14, 1906, the same day the supplemental bill was filed setting up the assignment by him to Prindiville of his judgment against Richard Curran. Notwithstanding that assignment, the legal title to the judgment was in Bishop, and therefore he was not only a proper but a necessary party. Story on Eq. Pl., 9th ed., p. 150, sec. 153; Dubs v. Egli, 167 Ill. 514, 521.

We are of opinion that it was error to sustain the demurrer to the amended bill. We are also of opinion that the proposed amendments should have been allowed. They were presented in apt time, and, if allowed, would not have unreasonably delayed the defendants.

The decree will be reversed and the cause remanded, with directions to set aside the order sustaining the demurrer to the amended bill and dismissing the bill, and to overrule the demurrer to the amended bill and permit the complainants to make the amendments which the court, by its order of July 19, 1906, refused to permit, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*