## JABEZ K. BOTSFORD

*v.*

## CHARLES R. O'CONNER *et al.*

1. DESCENTS—*posthumous heir.* The true construction of our Statute of Descents, is, that a posthumous child inherits of an intestate father precisely as do his children born in his life time. On the death of a father, the title to his real estate vests in the posthumous child, although *in ventre sa mere,* precisely as though such child had been previously born.

2. SAME—*party to suit to divest title.* Such a child can not be divested of its title to lands thus inherited, by a proceeding in a court, unless made a party; nor will the form of action, whether in chancery, at law or under the statute, make the slightest difference. A person must have an opportunity of being heard before a court can deprive him of his rights, and this rule

applies equally to superior and inferior jurisdictions. Such a person, not having been made a party to the bill, his rights are not cut off by the decree, the sale or the administrator's deed, and he can recover from those claiming his title.

3. SUMMONS—*service—return.* The sheriff indorsed on a summons in chancery this return: "Served this writ on the within named Mary O'Conner and Charles R. O'Conner, the others not found in my county, the 26th day of August, 1858:" *Held,* the return of service insufficient to confer jurisdiction of the persons of the defendants.

4. SAME—*return—what it must show.* The return of service must show it was served by copy, in chancery, or by reading, at law; it must show the time, the manner and upon whom served, and for the want of these particulars the court will fail to acquire jurisdiction. There must be a legal service, and it must appear from the return that it is such service as gives the court jurisdiction over the person of the defendant.

5. SERVICE—*finding of the court in decree.* When the court, by the decree, finds there was service, that, like any other finding of the court, can never be contradicted in a collateral proceeding, by parol or other evidence, outside of the record in that proceeding. It, however, may be by other portions of the same record. But such a finding is conclusive in a collateral proceeding, unless thus rebutted.

6. SAME—*presumptions in favor of.* Where a court of general jurisdiction has proceeded to adjudicate in a cause, it will be presumed that the court had evidence that there was such service or appearance as conferred jurisdiction of the person. The question is primary and must be first determined, but the presumption may be rebutted. If the same record shows insufficient service, and it fails to show the court otherwise acquired jurisdiction, then the presumption is rebutted, and it will be held the court acted on insufficient service. When the return appears in the record, and there is no finding of the court, from which it may be inferred that the court otherwise acquired jurisdiction, it will be held the court acted on the service appearing in the record.

7. SAME—*insufficient—a nullity.* Where service of summons is insufficient to confer jurisdiction, the decree as to the defendants is a nullity, and may be questioned in a collateral proceeding. Where service is by summons, parol evidence will not be heard to prove or to aid it. It is otherwise when the service is by publication.

8. SAME—*service defective.* The return in this case appeared in the record, and is defective, in not showing how it was made, and as parol evidence could not be received to aid it, it can not be presumed the court acted on other evidence than the return, and it rebuts the finding of the court that there was service.

9. JURISDICTION—*part of heirs—parties.* Although part only of the heirs of a deceased person are made parties to a proceeding to sell real estate

to pay debts of the intestate, still the court will acquire jurisdiction of the subject matter, as the statute does not require all parties in interest to be before the court before it can acquire such jurisdiction. It is the death of the party seized of real estate, the grant of letters testamentary or of administration, his indebtedness, and filing the petition, which confer jurisdiction. It is necessary to make all persons in interest parties, that their rights may be adjusted, and it may be error not to do so, but that does not defeat the jurisdiction of the court. A decree in such a case is binding on the parties to it.

10. ADMINISTRATRIX—*guardian.* When the administratrix was also guardian of the heirs, whose property she applied for leave to sell, such fact, if illegal, would not prevent the court from acquiring jurisdiction, and the fact that she, as guardian, was not made defendant, if erroneous, did not go to the jurisdiction.

11. NOTICE—*administrator's sale.* The omission of an administrator to re-advertise the property for an adjourned sale, does not render the sale void. The 106th section of the Statute of Wills imposes a penalty for failing to comply with the statute, in making such sales, but declares such omission shall not be sufficient to defeat the sale.

APPEAL from the Superior Court of Chicago ; the Hon. JOSEPH E. GARY, Judge, presiding.

The facts sufficiently appear in the opinion.

Mr. GRANT GOODRICH, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The undisputed facts in this case are, that Charles O'Conner, being seized in fee of the premises in controversy, died on the 1st of March, 1858, intestate, leaving, surviving him, a widow and two minor children. His widow was then *enceinte,* and was afterward delivered of a female child, which was named Ann O'Conner, and who, not then being born, was not made a party with the other heirs to a proceeding subsequently had for the sale of the real estate of intestate, for the payment of

his debts. On the 4th day of March, 1858, Ann O'Conner, the widow, was appointed administratrix of the estate, and she, at the same time, became guardian of Charles R. and Mary O'Conner. On the 26th of August, 1858, and before the birth of the posthumous child, the administratrix filed a petition in the county court of Cook county, praying the sale of the lands of which intestate died seized, to pay the debts which had been proved and allowed against his estate, in which proceeding Charles R. and Mary, together with two tenants, who were in possession of a portion of the lands, were made defendants. A summons was issued, upon which the sheriff indorsed this return : " Served this writ on the within named Mary O'Conner and Charles O'Conner, the others not found in my county, the 29th day of August, 1858."

On a hearing, a decree was rendered, ordering the sale of these premises, with others, on the 16th of September, 1858, by which decree the court found that the two minor children, Mary and Charles R., were all the legal heirs which intestate left surviving him, and ordered the administratrix to sell all the right, title and interest, which was of intestate at his death, and which descended to Charles R. and Mary O'Conner. The decree required a report of proceedings thereunder before executing deeds after the sale.

There is nothing to show that Ann O'Conner, the posthumous child, was in any manner referred to, or made a party to that proceeding. A supplemental proceeding was had in the case at the next March term of the court, but the posthumous child was not then made a party. On the 1st day of June, 1859, and after the birth of this child, the property was advertised for sale, on the 18th day of July, 1859, when a portion of the property named in the decree was sold, but the property in dispute was not sold until the 25th of the following October, the sale having been several times adjourned. The sale was reported to and approved by the court. A deed was, thereupon, made to the purchaser, from whom appellant, through *mesne* conveyances, derives title. Appellees instituted a suit in

ejectment in the Superior Court of Chicago, against appellant for the premises. A trial was had, resulting in favor of appellees, and the record is brought to this court by appeal, and various errors are assigned.

The question, whether the posthumous child took, by descent, as did the brother and sister, or only as heir to the property which might remain after payment of all debts of intestate, we regard as fully settled by the cases of *Detrick* v. *Migatt,* 19 Ill. 146, and *McConnel* v. *Smith,* 39 Ill. 279. In those cases, which were the same, differently presented, it was held, that under our Statute of Descents, a posthumous child inherited of an intestate father precisely as did those who were born in his life time ; that on the death of the father, the title to his real estate vested in the posthumous child, although *in ventre sa mere,* precisely as though such child had been previously born. And those cases further hold, that such a child can not be deprived of its rights to lands so inherited, by a proceeding in court, unless made a party. Nor do we conceive that the form of action, whether in chancery, at law, or under the statute, can, in this respect, make the slightest difference.

It is a principle that lies at the foundation of all jurisprudence in civilized countries, that a person must have an opportunity of being heard, before a court can deprive such person of his rights. To proceed upon any other rule, would shock the sense of justice entertained by mankind, would work great wrong and injustice, and render the administration of justice a mere form. Until a person is made a party to a suit, and is afforded a reasonable opportunity of being heard in defense of his rights, a court has no power to divest him of a vested right.

This is coeval with the common law, and lies at the very foundation of our jurisprudence, whether chancery, common law or statutory, and applies equally to superior as well as inferior jurisdictions. This child was born about a year before the sale was made, and every opportunity was afforded for making it a party, and thus cutting off its rights to this

inheritance, but, from inattention or other cause, it was not done. Not having been made a party to the bill, the rights of this posthumous child were not affected by the decree, the sale or the administratrix's deed, and it had a right, under the evidence in the record, to recover. Was the service on Charles R. and Mary sufficient to give the court jurisdiction of their persons, so as to render a decree under which they could be divested of their title to this property? The return is, "served this writ on the within named Mary O'Conner and Charles R. O'Conner, the others not found in my county, the 26th day of August, 1858." This return fails to state how the writ was served; whether by copy, by reading, by posting notice or otherwise, does not appear.

To give the court jurisdiction of the persons of defendants, a legal service upon them is necessary. The mode of service of summons, when not otherwise provided ·by statute, is by reading the same to the defendants, and to each of them, and the return should show the time when, upon whom, and the manner in which, service was made, and unless it thus appeared, the court failed to acquire jurisdiction. *Ball* v. *Shattuck,* 16 Ill. 299. And in the case of *Belingall* v. *Gear,* 3 Scam. 575, it was held that it must affirmatively appear, from the officer's return, that there was a legal service, and that it was such service as gave the court jurisdiction over the person of defendant.

But appellant contends that the decree cures the defective service; that it recites that it was shown to the court that due service of process was had upon the two minor defendants, and that the decree can not be contradicted by the summons and return. It is undeniably true, that this, like any other finding of the court, can never be contradicted in a collateral proceeding, by parol, or other evidence outside of the record in that proceeding. It, however, may by other portions of the same record. But such a finding is conclusive, in a collateral proceeding, until thus rebutted.

In the case of *Clark* v. *Thompson*, 47 Ill. 25, we said : " It is, however, insisted that when a court of general jurisdiction has proceeded to adjudicate a cause, we must presume that the court had evidence that there was such service, or appearance, as confers jurisdiction of the person; that the question of jurisdiction is primary, and must first be determined. This is no doubt true, in all collateral proceedings, but is liable to be rebutted. If the record shows service which is insufficient, and the record fails to show that the court found that it had jurisdiction, then the presumption is rebutted, and it must be held that the court acted upon the insufficient service. When a summons and return appear in the record, and there is no finding of the court from which it may be inferred that there was other service, or appearance, it will be presumed that the court acted upon the service which appears in the record. In this case, the summons and acknowledgment of service, were not sufficient to confer jurisdiction over the minor defendants, and unless jurisdiction was otherwise obtained, the decree, as to them, was a nullity, and may be attacked in a collateral proceeding."

This is directly to the point, and fully embraces this question, and must be held to govern it.

The return of service being insufficient, we must hold that the court below had no jurisdiction of the persons of the minor heirs, against whom this summons was issued and the decree rendered.

Where the service is by summons, verbal testimony can not be received, to prove or aid it. That can be shown alone by the officer's return. It is no doubt otherwise where service is by publication, when parol evidence may be received to prove that the notice was published.

The service appearing in the record was defective in not showing the manner in which it was made, and as parol evidence could not be rightfully heard to aid it, we can not presume the court acted on other evidence than the return. It therefore rebuts the finding that there was service.

Appellant insists that the court below did not, and could not, acquire jurisdiction of the case, because only a part of the heirs were made parties. We do not understand the statute as requiring all persons in interest to be made parties, to confer jurisdiction of the subject matter upon the court. The court acquires that jurisdiction, from the death of the party seized of real estate, the grant of letters testamentary or of administration, and his indebtedness, and filing the petition showing these facts. These are facts which confer jurisdiction upon the court, as to the subject matter. The necessity of making all persons in interest parties defendant, is to adjust their rights. Although clearly erroneous, the court would, in a proper case, calling for the sale of property of a decedent, acquire jurisdiction, and the decree would be binding on the parties to the decree, in a collateral proceeding, if only a part of the heirs were brought before the court. But as to those not parties to the proceeding, it would have no binding effect in any court, whether attacked directly or collaterally, and the fact that the administratrix was also guardian, if illegal, should have been objected to when the case was before the county court.

The failure to make the guardian a defendant, may be an error, but it can not be held to be necessary to the jurisdiction of the court because he is not made a defendant, and the omission is not objected to in the court below. We can not hold that the court thereby failed to acquire jurisdiction over those properly in court.

It is next insisted, that there should have been a new advertisement after each adjournment of the sale, and failing to give the notice required by the statute preceding the adjourned sale, that no title passed by the deed executed by the administratrix.

This sale is governed by the provisions of the Statute of Wills. The 106th section (Gross' Com. 820,) prescribes the notice that shall be given, the time it shall be published, and its various requirements of the time, place and terms of the sale. It imposes a heavy penalty on the administrator,

80 BOTSFORD v. O'CONNER et al. [Sept. T.,

Separate opinion: SCOTT, J.

for a failure to comply with the Statute of Wills, in making such sale. But the same section declares that such an omission shall not be deemed sufficient to affect the validity of the sale. This provision was, no doubt, designed to cure this character of omission. Where the court, rendering the decree, has proper jurisdiction, the sale should not, under this section, be held void because the administrator has omitted some requirement, such as a defective or insufficient notice of the sale.

We are, therefore, of opinion, that the objection in regard to the notice is unavailing.

The judgment of the court below must be affirmed.

*Judgment affirmed.*

The above opinion was filed at the September term, 1869, and at the September term, 1870, a petition for a rehearing was filed, which was granted. The case was argued at that term, and subsequently the following opinion was filed in the case:

Per CURIAM: A rehearing was granted in this case and further arguments were heard, and after carefully reviewing the grounds of the decision previously announced, and giving to the questions involved much reflection, a majority of the court have arrived at the same conclusion. We, therefore, adhere to the former decision and opinion then announced.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT delivered the following separate and dissenting opinion:

In view of the importance of many of the questions involved in this case, I deem it proper to state my views at length upon them, as well where I concur as where I dissent from the view expressed in the majority opinion of the court.

The appellees claim title to the premises in question, as heirs at law of Charles O'Conner, deceased, and the appellant claims title to the same property, under certain *mesne* conveyances from the purchaser at an administratrix's sale of said property, to pay the debts of the said decedent.    The important question involved in the case is, whether the proceedings had in the county court pass the title of the heirs to the property in controversy, to the purchaser at the administratrix's sale.    The answer to this inquiry involves two questions, arising upon the state of the facts presented in the record.    First, did the county court have jurisdiction to make the order of sale, on the 16th day of September, 1858, under which the premises were afterwards sold to the grantor of the appellant?    Second, what effect did the birth of the posthumous child, Ann O'Conner, born after the order of the sale was made, and before the premises were actually sold under the order of the court, have upon the sale?    And herein is involved the further inquiries : first, what estate does a posthumous child take in the lands of the ancestor? and, second, were the rights of the posthumous child, in this case, affected by the sale, if it was in all things regular as to the other heirs ?

The terre-tenants entered their appearance in the county court, but it is objected that the court did not have jurisdiction over the persons of the minor defendants, Charles R. and Mary.

The return on the summons issued is in the language following:  " Served this writ on the within named Mary O'Conner and Charles R. O'Conner, the others not found in my county, the 26th day of August, 1858.    John L. Wilson, Sheriff, by S. Miles, Deputy."

Manifestly, this return is defective, in not showing the manner of the service.    No other substantial objection can be taken to the return.    The date shows, with sufficient accuracy, the time of the service, and the fact that the writ was served by a deputy, in the name of a sheriff, is lawful.    It is a defective service alone in not showing the manner, whether by reading or by copy, in which the writ was served.    The decree

6—57TH ILL.

82        BOTSFORD v. O'CONNER et al.        [Sept. T.,

Separate opinion: SCOTT, J.

finds, that the petitioner shows to the court that due service of process was had on Mary and Charles R. O'Conner.

In a collateral proceeding like this, will the finding of the court, that due service of process was had, be deemed sufficient evidence of that fact, or will it be presumed, against the solemn finding of the court to the contrary, that the court acted on the defective service ?

Cases illustrative of the one at bar have frequently been before this court, and it is believed that when the decisions bearing on this question are examined, it will be found that they are entirely consistent with one another. It will be found that they are in harmony with the policy of the law in this and other States, where the common law prevails, to maintain the jurisdiction of the court, where parties have acquired property rights under its judgment or decree, until the contrary is made to appear. This rule is founded on considerations of public policy, and was established for the protection of purchasers on the faith of judicial process.

I will briefly notice the cases that have been passed upon by this court.

The case of *Wilson* v. *Greathouse*, 1 Scam. 174, to which the attention of the court has been called, is not in point on the question under consideration. It was a case that originated before a justice of the peace, and the return of the officer did not show the date of the service, the constable who served the process being dead. The rule is there laid down, that if the court does not have jurisdiction of the parties, its proceedings are *coram non judice*. Nor is the case of *Ogle* v. *Coffey*, 1 Scam. 239. That was on error to reverse a judgment rendered on default, where the return neither showed the date or manner of service, and it was held bad for that reason.

The case of *Ball* v. *Shattuck*, 16 Ill. 299, was a direct proceeding. The return was defective, in not showing how the summons was served. The case simply holds, that the mode of service, when not otherwise provided for by statute, is by

reading, and the return must show the time when, and on whom, the service was made.

The case of *Pardon* v. *Dwier*, 23 Ill. 572, was an action of ejectment. The defendant claimed title under a deed made in pursuance of a judgment rendered before a justice of the peace, a transcript of which had been filed in the office of the clerk of the circuit court. The record recited that the summons was " returned, duly served by reading to the defendant." When the return was produced, it read " duly served by reading, June 16, 1848." It was held that the transcript of the justice, or rather the record, was sufficient, *prima facie*, to show a proper return of service, but that it was not conclusive, and might be contradicted by the return itself, and that when the return was shown, it did contradict the statement in the record, and showed what had often been held to be an insufficient service to give the justice jurisdiction. I am unable to see how the return in this case, when produced, contradicted the finding of the court. It was entirely consistent with the finding, but not to the same extent. The decision, however, can be supported upon a different ground. It was the finding of a court of inferior and limited jurisdiction, and no liberal intendments are ever made in favor of its jurisdiction.

The sufficiency of the service in *Maher* v. *Bull*, 26 Ill. 348, was questioned on an appeal, and is not pertinent to the present inquiry. The case simply holds that a return, where the officer states that he served the writ by explaining the contents to the defendant, and that he accepted service, was not sufficient.

In *Clark* v. *Thompson*, 47 Ill. 25, the decree of the circuit court was attacked collaterally, as in the present case. The service was manifestly insufficient to confer jurisdiction. The court say : " if the record shows service which is insufficient, and the record fails to show that the court found that it had jurisdiction, then the presumption " (that is, in favor of the jurisdiction of the court) " is rebutted, and it must be held that the court acted upon the insufficient service." That case can clearly be distinguished from the one now before the

court. In that case, there was no finding of the court from which it could be inferred that there was service, and, therefore it was held that the court must have acted on the defective service. Not so in this case. Here the court found that it was shown that due service of process was had.

In *Reddick et al.* v. *The State Bank*, 27 Ill. 145, the court modified, to some extent, the rule stated in *Randall* v. *Songer*, 16 Ill. 27, and in *Vairin* v. *Edmonson*, 5 Gilm. 272, and say, " it is to be presumed that no court will state of record the existence of facts which had no existence, or pass a decree, or render a judgment, unless proof of service or notice were actually produced. The record, therefore, stating such facts, and nothing to the contrary appearing, it should be received as evidence of their existence."

In *Banks* v. *Banks*, 31 Ill. 162, service was acknowledged by defendant, on the back of the summons, and it was objected that there was no evidence in the record that it was the genuine signature of the defendant ; but the decree recited that it appeared to the court that process had been duly served on the defendant. The court there approved the principle of *Timmerman* v. *Phelps*, 27 Ill. 496, and say : " this finding, as in that case, is conclusive, unless the defendant, on a motion to set aside the default, would show the court unadvisedly found the fact."

In *Rivard* v. *Gardner*, 39 Ill. 125, it was objected, that the return of the sheriff on the summons, did not show the date of service, and, *non constat*, that the court had jurisdiction to pronounce a decree at the time it did so. But the decree recited that the defendants were duly served, and on the authority of *Banks* v. *Banks*, *Reddick* v. *The State Bank*, and *Timmerman* v. *Phelps*, this recital in the decree was held to cure the defect in the return, and the court say, " although the return was without date, we must suppose the court was satisfied, in some legitimate mode, that the service was in season."

In *Moore* v. *Neil*, 39 Ill. 256, it was objected, that the notice was defective in not stating the first and last days of publication, as the statute required. The decree, however, recited that "it appearing to the court that notice, according to law, was given, of the pendency of this cause." It was held that this recital in the decree was sufficient evidence that the proper notice had been given. The court approve the cases of *Gibson* v. *Roll*, 27 Ill. 92, and *Goudy* v. *Hall*, 36 Ill. 319, and say, "although the certificate of the printer was defective, yet we must presume, from this recital, that the court received other evidence of the date of publication."

The case of *Miller* v. *Handy*, 40 Ill. 448, is a well considered case, and, on the authority of *Reddick* v. *The State Bank,* and *Goudy* v. *Hall*, the court say, "the record, therefore, stating the fact of the return of two *nihils*, and nothing to the contrary appearing, must be held *prima facie* evidence, at least, of the existence of that fact, and there is nothing in the case to show that the finding of the court was not in strict accordance with the fact."

The case of *Russell* v. *Brown et al.* 41 Ill. 183, is to the same effect, and is in harmony with all the cases on this question.

It will be observed that there is a marked distinction preserved in all the cases, where the decree or judgment of the court is assailed on error or on appeal, and where the same is attacked in a collateral proceeding. This distinction explains the apparent conflict in some of the cases.

There are errors which can only be reviewed by an appellate court. Courts not having appellate jurisdiction, have no power to revise the errors of a court of general jurisdiction. Where a court of general jurisdiction has found the existence of a fact, such finding, in all collateral proceedings, must be regarded as having been correctly found, until the contrary is made to appear. The reason for the rule is this: On the inspection of such proceedings, collaterally, we can only see what the court has done, and not whether it has proceeded erroneously, or found incorrectly, according to the proof before it. In the

case before the court, the circuit court found that there had been due service of process on certain of the defendants, and nothing appears in the record to show that the court found incorrectly.

A judgment, irreversible by a superior court, can not be declared a nullity by any authority of law ; if it has been rendered by a court of competent jurisdiction of the parties, the subject matter, with authority to use the process it has issued, it must remain the only test of the respective rights of the parties to it. *Voorhees* v. *The Bank of the United States*, 10 Peters, 400. Under any other rule, there would be no stability to judicial proceedings, or security for purchasers at judicial sales.

The jurisdiction of the county court, in all matters within its jurisdiction, is general and unlimited. In matters pertaining to the settlement of estates, that court is a court of general and original jurisdiction, and when acting on subjects within its jurisdiction, as liberal intendments will be made in its favor as in favor of the jurisdiction of the circuit courts. The general presumption will be indulged, and in all cases it will be presumed to have acted within its jurisdiction, until the contrary is made to appear. *Propst* v. *Meadows*, 13 Ill. 157.

The return of service in this case is entirely consistent with the finding of the court, but not to the same extent. The officer returns that he has served the writ upon the within named Mary and Charles R. O'Conner, and the court found that it was shown that due service of process was had. There is nothing in all the record to show that the court found, unadvisedly or incorrectly, on this jurisdictional fact. It was the province of the court to determine whether it had jurisdiction of the persons of the defendants in that proceeding, and that question it did determine, and recorded its solemn finding and judgment. Upon the authority of *Reddick* v. *The State Bank*, *supra*, the record stating such fact, and nothing to the contrary appearing, it should be received as evidence of the existence of that fact.

It would be a hard rule of law, indeed, that would require that a purchaser at a judicial sale should himself determine, with entire accuracy, and at his peril, whether the court that pronounced tbe judgment or decree, found correctly on the facts necessary to confer jurisdiction. Such a rule would deter all prudent men from becoming purchasers at judicial sales.

In the case of *Voorhees* v. *The Bank of the United States, supra,* the court said, "it would be a well merited reproach to our jurisprudence, if an innocent purchaser, no party to the suit, who had paid his money on the faith of an order of court, should not have the same protection under an erroneous proceeding, as the party who derived the benefit accruing from it. A purchaser, under a judicial process, pays the plaintiff his demand on the property sold; to the extent of the purchase money he discharges the defendant from his adjudged obligation. Time has given an inviolable sanctity to every act of the court preceding the sale, which precludes the defendant from controverting the absolute right of the plaintiff to the full benefit of his judgment, and it shall not be permitted that the purchaser shall be answerable for defects in the record, from the consequences of which the plaintiff is absolved. Such flagrant injustice is imputable neither to the common nor to the statute law of the land. If a judgment is reversed for error, it is a settled principle of the common law, coeval with its existence, that the defendant shall have restitution only of the money. The purchaser shall hold the property sold, and there are few, if any, States in the Union which have not consecrated this principle by statute."

Consistently with the adjudged cases in this court, and in harmony with the uniform current of authorities, as I understand them, I hold that, from the finding of the court, it was shown that due service of process was had, and nothing to the contrary appearing, that the court had jurisdiction of the persons of the defendants, Charles R. and Mary O'Conner.

I will now consider, briefly, the remaining questions involved in the case:

First. What estate does a posthumous child take in the lands of its ancestor?

By the statute (Gross' Comp. 808, sec. 70,) it is provided that in all cases, where a person shall die intestate, leaving estate, real and personal, in this State, and a posthumous child shall be born unto him after his death, such child shall come in for its just proportion of the estate, in all respects, as though it had been born in the life time of the intestate.

It is insisted by the appellant, that such child does not inherit like a child living at the death of the parent, but its interest is limited to its "just share," which is only what remains after payment of debts. I do not think the statute will bear that construction. It is the duty of courts to so interpret the statutes as to do equal and exact justice to all parties, if, in doing so, no violence is done to the language used. It would be much more equitable to hold that the terms used in the statute, "shall come in" for its "just proportion," mean that such a child shall inherit, in equal proportion, and in like manner, with children born in the life time of the common parent. And that is the plain and obvious meaning of the statute. It has been twice so held by this court. *Detrick* v. *Migatt et al.*, 19 Ill, 146 ; *McConnel* v. *Smith*, 39 Ill. 278.

In the case of *Detrick* v. *Migatt*, it was held, that the posthumous child takes the estate by force of the statute, directly from the parent, with the same effect as if in being at the death of the parent.

And, second : Were the rights of the posthumous child, in this instance, affected by the sale?

To my mind, there is more seeming difficulty in this question than in any other one in the whole case, and yet I think it is capable of solution on well known and well established principles of law.

It is an elementary principle, that before a party can be deprived of his interest in an estate by the judgment or decree either of a court of law or equity, the court that assumes to

pronounce the judgment or decree, must have jurisdiction both of the subject matter of the suit, and of the person of the party whose interest is to be affected. I know of no exception to this rule in all the range of judicial proceedings. It applies alike to all courts, whether they are of general or statutory jurisdiction. It is difficult to conceive how a rule, so essential in all jurisprudence, can ever be relaxed or dispensed with, in a given case.

The effect of what we are asked to say is, that this posthumous child's inheritance is cut off and effectually barred by a sale under a decree of a court, to which it was in nowise a party. It was born within the usual period of gestation, after the death of the parent, and more than a year before the order of sale was executed. Upon the birth of the child, its just proportion of the estate vested instantly, and although ample opportunity was afforded for making it a party to the proceedings had in the county court, and thus cutting off its rights in this inheritance, yet from inattention, or other cause, it was not done.

I am unable to distinguish this from the case of *Detrick* v. *Migatt.* The same principle was involved, and no reason is perceived why that case does not control this one.

We are reminded that courts have said, that a purchaser at a judicial sale need not concern himself about the errors of the court. That is true only where the court has jurisdiction of the subject matter, and of the person of the party by service of process, or where it will be presumed, from the findings of the court, that it had jurisdiction of those whose interests are to be affected by the sale. If the court has not such jurisdiction, then its whole proceedings are *coram non judice*, and the purchaser takes nothing under the sale. It was so held in the case of *Wilson* v. *Greathouse*, above cited. The converse of this rule is undoubtedly true, that if the court has such jurisdiction, though it proceeds irregularly and erroneously, still the purchaser will be protected. It has always been the policy of the law to protect purchasers at judicial sales; but in our

efforts to do so, we must do no violence to the plainest principles of our jurisprudence.

The case of *McPherron* v. *Cunliff et al.* 11 Sergt. & Rawle 422, is certainly the strongest case to which our attention has been called, and yet we do not think that it fully sustains the position assumed by the counsel for the appellant. In that case, the ancestor, when he came to this country, left in Ireland a lawful wife and heirs. After his arrival here, he was secretly married to a woman, and children were born unto him. On his death, letters of administration were regularly granted on his estate, and a proceeding was instituted in the orphan's court, to sell the real estate of the decedent, to which all his children, by the last marriage, were made parties—no others were then known to exist. The estate was sold, under the order of the court, and the purchasers went into possession of the same. Twenty years after the sale, it was attacked, collaterally, by one of the illegitimate children, in this wise. · He went to Ireland, and there purchased the title to the premises of the true heirs, and then instituted his suit.

Much stress is laid by the court on the iniquitous conduct of the plaintiff. With the title thus purchased of the legitimate heirs, for a nominal sum, he undertook to attack a sale to which he was himself a party, and which was made, in part, for his own maintenance when a minor. The court held, that upon all principles of justice, and especially after the lapse of so great a period, he was both legally and equitably estopped from asserting such a title, to maintain which he must necessarily prove himself a bastard, and dishonor his own father and mother. There is great force and justness in the reasoning of the court on that point.

It is true, however, the court say, in that case, that such a sentence as they were then considering, is definitive; that it passes *in rem judicatum;* that the proceeding is purely *in rem* against the estate of the intestate, and not *in personam.* And to support this view, they liken it to a condemnation of

goods in a court of exchequer, whose condemnation is final, in an action to try the right to the goods.

I can not say that the analogy will hold good. The proceeding, under our statute, to sell the real estate of an intestate to pay debts is not purely a proceeding *in rem.* Parties in interest are necessary thereto, by the positive provisions of the law. To hold that such parties are not necessary, under our law, would be to blot out and obliterate the statute.

The heir, in the case before us, asserted her right in apt time. No fraud or *laches* can be imputed to her. The court never had any control over her person, by the service of any process, nor is there any finding of a court that it had jurisdiction.

I, therefore, concur in the majority opinion of this court, in holding that the interest of the child, Ann O'Conner, was in nowise affected by the proceedings had in the county court, for the sale of the real estate of the intestate.

Mr. JUSTICE SHELDON : I concur in the foregoing opinion of Mr. Justice Scott.