JOHANNA MABLE LEININGER *et al.* Appellees, *vs.* WALTER REICHLE *et al.*—(TIMOTHY T. BEACH, Appellant.)

*Opinion filed June 18, 1925.*

1. WILLS—*when an erroneous description may be disregarded.* Where the scrivener in drawing a will inserts the wrong range number in the description of a devise of a life estate, a subsequent general devise of all the residue of the testator's property sufficiently indicates the testator's intention to dispose of all his own property by the will, and his belief that he was doing so, as if he had used the words "my property" in each devise, and the erroneous description in the particular devise may be rejected where a sufficient description remains to locate the property.

2. SAME—*when payment is not a condition to vesting of devise.* A provision in a will requiring a devisee to pay the executor a certain sum, which is made a lien on the land given by the devise, is not a condition affecting the vesting of title to the land in the devisee but merely charges the land with the payment of the amount.

3. SAME—*when decree for sale of land to pay debts is void as to remaindermen.* Where a will devises life estates to the testator's children with remainders to their children, provided that if any child shall die leaving no children such share shall go to the testator's other children, a decree for the sale of the interest of a child to pay debts of the estate is void as to living grandchildren who were not made parties and is subject to collateral attack in a subsequent suit by them for partition.

4. SAME—*when purchaser at sale by executor is not entitled to subrogation to rights of creditors.* Where there is a deficiency in

317—40

personal assets, and the devisees, who are merely life tenants, agree to become purchasers at an executor's sale, but the title conveyed by the executor fails for want of jurisdiction of remaindermen who were not made parties, the rule of *caveat emptor* applies, and a purchaser has no right to be subrogated to the rights of creditors of the estate who were paid with the purchase money, as the debts of the testator are not a lien upon his real estate until it is subjected to their payment as prescribed by law.

5. SAME—*a life tenant cannot charge remaindermen with improvements made by him.* A life tenant cannot, by placing permanent improvements on land, however much they may enhance its value, create a charge against the remaindermen, but such improvements will be deemed to have been made for the life tenant during the existence of his own estate, and upon its termination, being a part of the realty, they will go as such to the remaindermen, who take them without any liability to reimburse the life tenant.

APPEAL from the Circuit Court of Logan county; the Hon. EDWARD BARRY, Judge, presiding.

HAROLD F. TRAPP, for appellant.

McCORMICK & MURPHY, (JAMES E. MILLER, guardian *ad litem,*) for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This appeal is from a decree of the circuit court of Logan county ordering the partition of the east half of the northeast quarter of section 24, town 20, north, range 2, west of the third principal meridian, in that county. The contest is between the grandchildren of Jeremiah M. Ryan, who died on May 26, 1896, and a remote grantee claiming through a sale by Ryan's executor under an order of the county court of Logan county for the payment of the debts of the estate.

Ryan owned the land in controversy and other land and left a will executed on May 2, 1896, by which, after providing for the payment of his debts and funeral expenses and a legacy of $300 to a church, he disposed of all his property to his son, James, and his five daughters, who were

his only heirs. Thomas Ryan, his son-in-law, was named as executor, and the testator directed that the share of any of his children who died without leaving children should descend to his other children. The will recited the existence of two mortgages, for the aggregate sum of $3000, on a part of the land devised, and directed that the mortgages be paid off out of his personal estate and that the children to whom the lands were devised should receive the same free and clear of mortgages. The testator's four older children were adults, and he devised to each of them eighty acres of land for life with remainder to his or her children, and each devise was followed by the proviso that the devisee should pay to the testator's executor the sum of $1500 within three years after the testator's death and the land should be chargeable with the payment of that amount. The two younger daughters were minors, and the testator devised to Johanna, the older of them, fifty acres of land for life with remainder to her children, charging the land with the payment of $1000 in the same manner as the devises to the other children were charged. To the youngest daughter he devised fifty acres in fee, without any charge against it. The tract of eighty acres devised to the testator's daughter Mary Reichle was described in the will as the east half of the northeast quarter of section 24, town 20, range 4, west of the third principal meridian, in Logan county, Illinois. The testator did not own that tract, but he did own the east half of the northeast quarter of section 24, town 20, range 2, in Logan county.

The will was admitted to probate on May 29, 1896, and one week later, on June 6, the testator's children, including Johanna, who became of age on that day, but except the youngest, Ellen, who was still a minor, met in the office of A. D. Cadwallader, who had written the will, and quit-claim deeds were executed by all the others to Mary Reichle for her life with remainder to her children for the east half of the northeast quarter of section 24, town 20, north, range 2,

west. A like deed was made to each of the others of the land devised to them, respectively, which was executed by all the children except Ellen, the minor, and except the one who was grantee in the respective deeds. Cadwallader testified that there was an error in description of the piece of land, as he recollected it at the time he testified, that was given by the will to Mary Reichle, and this deed was made for the purpose of correcting that description. He believed the error was in the range, and he told them he could see no way except for the adults to make a quit-claim deed to Mary Reichle, and they signed it and he handed it to Jacob Reichle, Mary's husband, and told them all that the deed ought not to go on record until after the $1500 provided for in the will to be paid by her for the land was paid and until it was paid the deed would be of no force or effect. No objection was made by anybody to that arrangement and nothing else was said. The tract of land in controversy was occupied and farmed at the time of the testator's death by his son-in-law, Jacob Reichle, as a tenant under a lease which expired in 1898.

The indebtedness of the estate exceeded the personal property, and in March, 1898, the executor filed a petition in the county court alleging that the personal estate amounted to $1043.53, and the debts allowed, together with legacies and claims to be allowed, amounted to $8559.91, leaving a deficit of $7516.38, and asked for an order of court directing the sale of the real estate to pay debts. The testator's children were all made defendants and all entered their appearance except Ellen, who was still a minor. She was served with process and a guardian *ad litem* was appointed for her. Mary Reichle had at that time three children: Johanna Mable, (who is now Mrs. Leininger,) Edith Marie, (who is now Mrs. Schreiber,) and Ralph Jacob. They were not made parties to the petition. A decree was entered for the sale of the real estate. An agreement was made among the children, including the executor, in regard

to the sale, that each one should bid at the sale upon the tract devised to him or her an amount fixed by the executor, the aggregate amount of such bids being the amount required by the executor to cover the deficiency of the personal assets, and the land was bid in accordingly for those amounts, Mrs. Reichle bidding $2088.58 for her eighty. The sale was confirmed by the court and deeds were made by the executor accordingly. The amount of Mrs. Reichle's bid was paid by her husband, whose father signed his notes for part of the amount which he borrowed, and she conveyed the tract to her father-in-law, who conveyed it back to her husband. Reichle farmed the land, and he and his wife occupied the premises until her death, on December 3, 1912. A drainage district was organized including the land, and Reichle paid the assessment of $577. He also spent $1500 in tiling the land, built additions to the house and made other improvements. He painted his name on the barn in large letters and paid the taxes from the time he received the deed from his father until March 20, 1920. After the death of his wife he continued to occupy and farm the land the same as before. Besides the three children of Jacob and Mary Reichle born before the executor's sale, seven other children were born to them after the sale, one of whom died at eleven years of age, on February 6, 1911, before the mother's death, and another born on the day of her mother's death died on December 27, 1917, at the age of five years.

In the fall of 1919 Jacob Reichle entered into a contract to sell the eighty acres in question to Fred Ruenzi. Upon receiving the abstract of title Ruenzi had it examined and was advised that the title was defective. He reported the fact that he had been so advised to Reichle, who asked him to go and see Timothy T. Beach, who was an able lawyer and had been until recently practicing for many years in Logan county. Ruenzi went with Reichle to see Beach, but Ruenzi was not satisfied about the title and de-

clined to go on with the purchase. Afterward Reichle and Beach entered into negotiations in regard to the land, which resulted in a contract by which Beach conveyed to Reichle 320 acres of land in Minnesota at $95 an acre and advanced him $1600 to add to the house on the Minnesota land and received a conveyance from Reichle of the eighty-acre tract at $400 an acre, subject to a $5000 mortgage given by Reichle to the Connecticut Mutual Life Insurance Company, Beach taking a mortgage from Reichle on the Minnesota land for the $5000 difference due to him. These deeds were made on March 17, 1920.

On March 29, 1920, the three older children of Mary Reichle (Johanna Mable and Edith Marie, who had married and whose names were then Wranischar and Schreiber, respectively, and Ralph Jacob Reichle,) filed a bill for the partition of the eighty acres in controversy, making the other children, who were all minors, as well as Beach and the Connecticut Mutual Life Insurance Company, parties defendant. The bill alleged, in addition to other things, that the proceedings for the sale of the real estate were for the purpose of depriving the remaindermen of their interest in the property, and in addition to a partition prayed also that the executor's deed to Mary Reichle, her deed to Jacob Reichle, Sr., and his deed to Jacob Reichle, Jr., as well as the latter's deed to Beach and the mortgage to the Connecticut Mutual Life Insurance Company, be set aside. Reichle inherited a portion of the interest in the land of his two children who died and which his deed conveyed to Beach, but the bill alleged that as to any other interests the deed was a cloud on the complainants' title, which should be removed. The mortgage for $5000 was given to the Connecticut Mutual Life Insurance Company by Reichle and his wife shortly before her death, and the bill alleged that this mortgage, also, was a cloud on the complainants' title except as to the interests inherited from the two deceased children.

Beach answered the bill, alleging that Mary Reichle had no money with which to pay the $1500 which was made a condition of the devise to her; that the description of the land in the devise could not be held to apply to the land in controversy; that she refused to accept the devise and that the deed to her was not delivered; that the personal property was insufficient to pay the debts of the estate and it became necessary to sell real estate to pay them; that the proceedings for that purpose were regular and were not for the purpose of depriving the remaindermen of their interests in the real estate; that the deeds of the executor to Mary Reichle, and of her and her husband to Jacob Reichle, Sr., and of him and his wife to Jacob Reichle, Jr., vested the latter with the full legal title, and from the time of the execution of the last deed he had been in the open, notorious, hostile, exclusive, adverse possession of the real estate claiming to own it in fee, making valuable improvements and repairs and paying all taxes and assessments. The answer sets up the purchase of the land by Beach in exchange for his land in Minnesota. He also filed pleas under section 1 and section 6 of the Statute of Limitations,—of the twenty years' statute and the seven years' statute,—and filed a cross-bill seeking to remove the deed of June 6, 1896, as a cloud on his title. The Connecticut Mutual Life Insurance Company answered and filed a cross-bill praying the foreclosure of its mortgage, and the infant defendants answered by their guardian *ad litem* and filed a cross-bill asking the same relief as was asked in the original bill. The cause was referred to a master, who reported the evidence, and the court entered a decree granting the relief sought by the original bill, dismissing Beach's cross-bill and decreeing partition, directing the commissioners to set off to Beach for his share and interest the part on which are located the improvements and betterments placed upon the premises by Reichle after the death of his wife, if the same can be done without prejudice to the interests of the

remaining owners. Beach, alone, has perfected an appeal from the decree.

The appellant's contentions are, that the rule of equity permitting the correction of errors in wills by construction to arrive at the intention of the testator applies only to heirs, devisees or other volunteers and not to the purchasers in good faith for value after the lapse of many years; that the complainants are barred by *laches* and by the seven years' Statute of Limitations; that by the refusal of the devise Mary Reichle accelerated the remainder, and that the estate of the children in remainder became a present estate in fee and the twenty years' Statute of Limitations barred the complainants; that the appellant was subrogated to the rights of Jacob Reichle, Jr., whose money bid at the sale discharged the lien for the $1500 and judgment liens to the amount of $2088.58, and that he is entitled to have this sum, with interest at five per cent from June 20, 1898, re-paid before relief can be granted to the complainants; that the appellant is subrogated to the rights of Reichle to have the improvements which he made upon the premises in good faith at an actual cost of over $5200 awarded to him apart from his interest in the land, and if the premises are sold, to be re-paid in money.

In this connection it may be stated that it is said in appellant's brief that it is conceded by the pleadings, or at least not challenged, that the quit-claim deed of June 6, 1896, never became effective as a valid deed for want of delivery. The appellees take issue on this proposition and call attention to the fact that the bill contains the allegation that on June 6, 1896, Katie Ryan and her husband, Maggie Knecht and her husband, James M. Ryan and his wife, and Johanna Ryan, unmarried, made, executed and delivered to Mary Reichle a quit-claim deed, a copy of which is made Exhibit "A" to the bill, and the appellees state that they base their claim of title to the premises in controversy both upon the provisions of the will of Jeremiah M. Ryan

and the deed ·from his heirs dated June 6, 1896. The decree found that the testator at the time of making his will and at his death was seized of the east half of the northeast quarter of section 24, town 20, north, range 2, in Logan county, and never owned the east half of the northeast quarter of section 24, town 20, range 4, but the scrivener who wrote his will wrote the false and erroneous description "four" after the word "range;" that the testator intended to devise, and did devise, to his daughter, Mary Reichle, for her natural life only, the east half of the northeast quarter of section 24, town 20, north, range 2, with remainder in fee simple to the children of Mary Reichle. By the tenth paragraph of his will the testator provided: "All the rest, residue and remainder of my property of every kind and character, either real, personal or mixed of which I shall die seized or possessed, including the sums of money hereinbefore provided to be paid to my executors by my children I give, bequeath and devise to my said children share and share alike, to have and to hold for their own use and behoof forever." Such a devise disposing of all the residue of the testator's property indicates the testator's intention to dispose of all his own property by his will, and his belief that he was doing so, as clearly as if he had used the words "my property" in each devise, and words of false description in the particular devises may be rejected where the property intended to be devised is sufficiently identified by the words remaining. (*Johnston* v. *Gastman,* 291 Ill. 516.) This question was thoroughly considered in the case of *Stevenson* v. *Stevenson,* 285 Ill. 486, in which it was said: "Were we permitted to use as part of the description the words 'my real estate' or their equivalent, of course the land could be definitely located and would pass to the devisee by the will. As the will does not anywhere in it contain words that definitely show that the testator intended to devise his land and only his land, we cannot read into the description such words." The construction given this

will by the circuit court is supported by the decision in the *Stevenson case* and that of *Johnston* v. *Gastman, supra.* There is no evidence that Mrs. Reichle refused to accept the devise given her by her father. It is true, she had no money to pay the $1500 which the will provided should be a charge upon the land devised to her and she did not pay it, but there is no evidence in the record that she ever expressed an intention not to accept the devise of the land. The payment of $1500 was not required to be made until three years after the death of the testator. It was not a condition affecting the vesting of title to the land. The proviso requiring such payment merely charged the land with the payment of the amount. (*Parsons* v. *Millar,* 189 Ill. 107; *Spangler* v. *Newman,* 239 id. 616; *Daly* v. *Wilkie,* 111 id. 382; *Nowak* v. *Dombrowski,* 267 id. 103.) Mrs. Reichle's children had a vested remainder in the land. They were not parties to the petition to sell the land to pay the debts, therefore the decree in that proceeding as to them was void and subject to collateral attack by them at any time, in any court and in any proceeding. It is a principle that lies at the foundation of all jurisprudence in civilized countries, that a person must have an opportunity of being heard before a court can deprive such person of his rights. This rule is applicable to all proceedings, whether common law, chancery or statutory, and no court has power to divest a person of a vested right until he is made a party to a suit and has had a reasonable opportunity of being heard in defense of his rights. (*Botsford* v. *O'Conner,* 57 Ill. 72; *Heppe* v. *Szczepanski,* 209 id. 88.) Reichle's possession of the land after the conveyance to him was under the claim of ownership, but the Statute of Limitations would not begin to run in his favor against the remaindermen, who were his children, until after the termination of the life estate of their mother, which was on December 3, 1912. *Weigel* v. *Green,* 218 Ill. 227; *Schroeder* v. *Bozarth,* 224 id. 310; *Brown* v. *Ray,* 314 id. 570; *Gibbs* v. *Gerdes,* 291 id. 490.

The bill in this case was filed on March 29, 1920. Neither the twenty years' Statute of Limitations nor the seven years' statute constitutes any defense to the bill. The executor's deed to Mrs. Reichle was void as to her children because they were not parties to the decree of sale, but as to all who were parties it was a conveyance of the legal title during the life of Mrs. Reichle, which by her deed to Jacob Reichle, Sr., and his conveyance back to Jacob Reichle, Jr., was vested in the latter. On the death of his wife, on December 3, 1912, the estate for her life ended and his legal right of possession as tenant for her life ceased but his possession continued to be rightful, for he was a tenant in common with the remaindermen by virtue of the estate which he had inherited from his deceased daughter. The possession of one tenant in common is not adverse to his co-tenants in the absence of a disseizin. (*Roberts* v. *Cox,* 259 Ill. 232.) There was no disseizin but Reichle continued to occupy the land with his co-tenants, who were his children, all living together in the family until the marriage of his older daughter, in 1915. There is no evidence of a disseizin or adverse possession or claim of exclusive ownership until his attempt to sell the land to John Rohrer in 1917, which was within less than seven years of the commencement of the suit.

The decree properly charged the appellant with the rents and profits of the premises after he acquired possession through the conveyance to him, less the taxes paid by him. It is contended that the appellant should have been reimbursed for the amount of Reichle's bid for the land, ($2088.58,) with interest from June 20, 1898, by way of subrogation, as it is claimed, to the lien imposed by the will and the rights of the creditors paid by the purchase money. The rule of *caveat emptor* applies to this sale and the doctrine of subrogation has no application here. That doctrine, in equity, is confined to the relation of principal

and surety and guarantors, and to cases where a person, to protect his own junior lien, is compelled to remove one which is superior, and to cases of insurers paying losses. A purchaser of land at an administrator's sale is not entitled in equity to be subrogated to the claims of creditors paid with the purchase money, where the title fails for want of jurisdiction in the court ordering the sale over the persons of the defendants. The debts of the testator are not a lien upon his real estate, though in case of a deficiency of personal assets the real estate may be subjected to the payment of the debts in the manner and time prescribed by law. The administrator exercises a power, only, and if for want of jurisdiction of the persons that power has not been so exercised that the debts have become a charge on the land against the heirs or devisees or their grantees, the purchaser, who buys subject to the rule of *caveat emptor,* has no right to reimbursement or subrogation to the rights of creditors of the estate. (*Bishop* v. *O'Conner,* 69 Ill. 431; *Borders* v. *Hodges,* 154 id. 498; *Manternach* v. *Studt,* 240 id. 464.) The decree being void as to the remaindermen had no effect to charge the debts against their interests, and there was no sale of their interests. As to them the sale was not only voidable but was void. They never received any of the purchase money and received no benefit from it. Mary Reichle, and not Jacob, was the purchaser at the administrator's sale, and no right accrued to him as a purchaser. He simply furnished the purchase money which enabled his wife to comply with her bid, but he did not by that act become the purchaser. The sale was made to her, the land was conveyed to her, and subsequently she conveyed the land through a third party to her husband. Whatever may have been the understanding between the husband and wife in regard to the land or the payment of the purchase money, the transaction was no more than a loan by him to her of the money necessary to complete the purchase, and the fact that the money was applied by the administrator to pay

debts of the estate does not entitle the lender to the claims of the creditors. *Burr* v. *Bloemer,* 174 Ill. 638.

It is claimed that to the extent of $1500 the money paid by Reichle was used to discharge the lien on the land created by the will, and that Reichle was entitled to be subrogated to that lien on the principle that where a possessor or purchaser of real estate in good faith has paid money to discharge an existing incumbrance, having no notice of any infirmity in his title, he is entitled to be re-paid the amount of such payment by the true owner seeking to recover the possession from him. (*Hutson* v. *Wood,* 263 Ill. 376.) Reichle did not comply with any of the conditions requisite to the application of this principle. He was not a purchaser, he did not act in good faith, and he was not without notice of an infirmity in the title. The purchaser was Mary Reichle, and Jacob Reichle's relation to the matter was merely that of a lender of money to the purchaser. He did not purchase in good faith. The whole proceeding for the sale of the land by the executor was collusive and fraudulent and not for the purpose of charging the debts of the testator upon the real estate but for the purpose of depriving the grandchildren of the testator of the provision which he had made for them in his will. The evidence is that the executor and the other heirs agreed upon the amount to be bid by each one on the land which had been devised to them in order to raise the amount necessary to pay the debts. Each one of the heirs bid the amount agreed on for the property devised to him or to her, respectively, and became the purchaser and received a deed for such property from the executor at that price except Ellen, the youngest, who was a minor, and in the executor's final account, which was filed a few days after the report of sale, he charges himself as follows: "Rec'd of Ellen Ryan by her guardian, Thomas Ryan, [who was the executor,] for her proportionate amount for payment of debts, $337.21,"—the same amount paid by her sister Johanna, to whom the will de-

vised for life, with remainder to her children, fifty acres of the one hundred-acre tract, the other fifty of which was devised to Ellen. It appears clear that the testator's children agreed upon the proportionate amount which each one should pay to satisfy the indebtedness of the estate and costs of administration, and this amount was paid. There was no necessity for the executor to sell the land except to enable the five children to whom devises or life estates had been made, to get rid of the remainders and invest themselves with the title in fee through the formality of an executor's sale. Ellen's land, which was devised to her in fee, was not sold. The purchaser was not without knowledge of the infirmity in the title. Not only were the parties acquainted with the will, but they had themselves made quitclaim deeds which conformed to the provisions of the will by quit-claiming life estates to the respective parties. The devisees or grantees of the life estates were not made parties to the proceeding, the defect of title was apparent on the face of the record, and the purchaser was bound to take notice of it.

There is evidence that Jacob Reichle expended in improvements on the land over $5000, and the decree provided that the commissioners in making partition should set off to appellant the part of the premises upon which the improvements were placed by Reichle after the death of his wife, if this could be done without prejudice to the interests of the remaining owners. It is claimed that this part of the decree is erroneous, and that the decree should have found the fair cash value of the improvements and directed not only that they be set off to the appellant, but that if not set off then he should have a part of their value decreed to him proportionate to the amounts of the interests of the other owners in the land. The life tenant cannot, by placing permanent improvements on land, however much they may enhance its value, create a charge against the remainderman. Such improvements will be deemed to have been

made for his own benefit during the existence of his own estate, and upon its termination, being a part of the realty, they will go as such to the remainderman, who will take them without any liability to reimburse the life tenant. (*Carter* v. *Carter*, 234 Ill. 507.) The greater part of the improvements was placed on the land during the lifetime of Mrs. Reichle, and there was therefore no liability on the part of the remaindermen to reimburse the life tenant. So far as any improvements were made after the death of Mrs. Reichle, if Jacob Reichle was entitled to any allowance for them it would only be a proportionate amount of the increased value caused by the improvements and not the cost of the improvements. (*Oppenheimer* v. *Szulerecki*, 297 Ill. 81.) There is no evidence as to how much, if any, the improvements made after Mrs. Reichle's death added to the value of the land, and for that reason no provision could be made in the decree for the allowance to the appellant of any increase in value. *Manternach* v. *Studt, supra.*

The decree is affirmed.                *Decree affirmed.*