(No. 23701.—

*In re* ESTATE OF JULIA B. RACKLIFFE.—(THE AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.* Appellees, *vs.* NELLIE KELLER, Appellant.)

*Opinion filed February 12, 1937—Petition for rehearing stricken April 14, 1937.*

FARTHING, J., dissenting.

STEPHEN A. CROSS, and EARL C. HALES, for appellant.

FRANK J. JACOBSON, and S. L. COHEN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal, on leave granted, from a judgment of the Appellate Court in a contempt proceeding involving certain bonds in the hands of appellant alleged to belong to the estate of Julia B. Rackliffe, an incompetent. The ground on which the judgment of that court, affirming that of the circuit court, is attacked, is lack of jurisdiction in the probate and circuit courts. The circuit court of Cook county had affirmed the order of the probate court finding that appellant, here, had $18,000 in bonds belonging to the estate of the said incompetent, and that she was in contempt of court for refusal to turn them over on an order made by the probate court in a proceeding instituted and heard for the purpose of declaring Julia B. Rackliffe to be a distracted person and for the appointment of a conservator for her.

It appears that on October 11, 1934, a hearing was had in the probate court on a petition seeking to have Julia B. Rackliffe declared incompetent and to have a conservator appointed for her. The appellant, Nellie Keller, for many years a friend of Julia B. Rackliffe, was subpoenaed as a witness and attended this hearing. The suggestion was made during that hearing that she had in her possession $18,000, in bonds, belonging to the estate of the incompetent. She was not questioned on that matter and no citation was issued then, or at any time, to require

her to turn such bonds over to the conservators appointed. Nevertheless the probate court entered an order requiring her to turn over United States Liberty bonds of the par value of $18,000, and a check for $815.63, which it was suggested she also had in her possession, but which belonged to Julia B. Rackliffe. About a week thereafter, appellees, as conservators, moved the court for a rule on appellant requiring her to show cause why she should not be adjudged in contempt of court for failure to turn over the Liberty bonds in accordance with the order of the court. On the same day appellant filed a special appearance questioning the jurisdiction of the court over her or to enter the order against her in the conservatorship proceeding, and filed a petition praying that that part of the order be eliminated. This petition was dismissed and she was ruled to show cause, in five days, why she should not be punished for contempt for failing to turn over the bonds.

She appealed from this order to the circuit court. In that court her counsel again objected to the court's jurisdiction of the matter on the ground the probate court had no jurisdiction, as there was no petition nor proceeding citing her under the statute, or proceeding of any kind against her in which she had been named defendant or respondent, and that the only proceeding was the conservatorship proceeding to have Julia B. Rackliffe adjudged incompetent. Her objection was overruled and a trial *de novo* ordered. She was required to give testimony as to the ownership of the bonds and, on hearing, she testified that the bonds had been given her by Mrs. Rackliffe some two years before. There was testimony on behalf of the appellees to the effect that appellant had admitted the bonds were given her for safe-keeping. The circuit court, by its order, found that it, and the probate court, had jurisdiction to enter the order complained of and to pass upon the ownership of the bonds, and held that the bonds were a part of the estate of the incompetent. It dis-

missed appellant's petition. The judgment of the circuit court was affirmed by the Appellate Court.

The only question involved in this appeal is whether the probate court had jurisdiction to require appellant to turn over the bonds involved. It is conceded that the circuit court had no more jurisdiction or power than that vested in the probate court. Appellees contend that, because in her petition filed in the probate court seeking to set aside the order requiring her to return the bonds, she had alleged that she owned the bonds, appellant submitted herself to the general jurisdiction of the probate court to determine that matter. Examination of her petition, however, discloses that while she alleged that she owned the bonds, there is no tender of such an issue. The only relief sought in the petition was to set aside the order of the probate court on the ground of want of jurisdiction in that court. Such did not amount to a general appearance.

The order of the probate court attempted to be enforced against appellant, if it have legal basis at all, necessarily grows out of statutory provisions regarding the property of incompetents.

Chapter 86 of the statute regarding lunatics, idiots, drunkards and spendthrifts, (State Bar Stat. 1935, sec. 53, p. 2041) provides: "If any conservator appointed pursuant to this act * * * shall state upon oath, to any county court, that he believes that any person has in his possession or control, or has concealed, converted or embezzled, any goods, chattels, moneys or effects, books of account, papers or any evidences of debt whatever, or titles to lands belonging to the ward; or that he believes that any person has any knowledge or information of or concerning any indebtedness or evidences of indebtedness, or property, titles or effects, belonging to the ward, which knowledge or information is necessary to the recovery of the same, by suit or otherwise, by the conservator, and that such person refuses to give to the conservator such

knowledge or information, the court shall require such person to appear before it by citation, and may examine him on oath, and hear the testimony of such conservator, and other evidence offered by either party, and make such order in the premises as the case may require. The court shall have power to hear, settle and adjudge all controverted questions of title and claims of adverse title in relation to personal property and to determine the right of property upon the demand of either party. Such questions of title and rights of such property, and such claims of adverse title in relation thereto shall be determined by trial by a jury of six persons if either party so requests." Such a proceeding is purely statutory. The right to institute it is conditioned on a statement by the conservator, under oath, of such facts as shall bring the cause within the prescribed requirements. Such statement is a condition attached to the right to be heard. *Hartray* v. *Chicago Railways Co.* 290 Ill. 85; *Sharp* v. *Sharp,* 213 id. 332; *The Harrisburg,* 119 U. S. 199, 30 L. ed. 358; *Bretthauer* v. *Jacobson,* 79 N. J. L. 223; *McRae* v. *New York, New Haven and Hartford Railroad Co.* 199 Mass. 418, 17 Corpus Juris, 1235.

It is an elementary principle of jurisprudence in all civilized countries that before property or liberty may be taken from an individual he shall have an opportunity to be heard on charges brought against him. This is a rule so universal in its application to all common law, chancery or statutory proceedings that there is general agreement that no court has power otherwise to divest a person of property or punish him. In fact the recognition of that basic principle of justice is so widespread that courts are now seldom called upon to restore rights of individuals so ruthlessly taken from them. (*Leininger* v. *Reichle,* 317 Ill. 625; *Heppe* v. *Szczepanski,* 209 id. 88; *Botsford* v. *O'Conner,* 57 id. 72.) The proceeding before the probate court was a petition to determine whether Julia B. Rack-

liffe was a distracted person. That was the only issue tried or which could be tried, and the fact that pleadings are largely dispensed with in the probate court gives no license to the judge of that court to, on a totally different issue, try one not a party before it, and to enter a peremptory order as to his rights against him without citation or without hearing. Appellant was present in the probate court merely by virtue of a subpoena to testify as a witness. There was no evidence offered that she had any property belonging to Julia B. Rackliffe. As soon as she could obtain a lawyer she entered her special limited appearance and moved vacation of that part of the order directed against her.

Appellees say that appellant called upon the court to exercise jurisdiction over her and therefore she waived jurisdictional defects. It is the rule that a petitioner who calls upon a court to exercise jurisdiction in a cause waives any jurisdictional defect, but, by reason of the character of her appearance in the probate court, such a rule does not apply to this case. (*Thomson* v. *Patek,* 235 Ill. 341.) The probate court had no jurisdiction to enter the order directing her to turn over the Liberty bonds and, on trial on appeal to the circuit court, that court had the same, and only the same, powers and jurisdiction enjoyed by the probate court. (*McMahan* v. *Trautvetter,* 305 Ill. 395; *Snyder* v. *Snyder,* 142 id. 60.) There is nothing in this record which would enable us to say that she at any time entered her general appearance and submitted to the jurisdiction of the court.

Appellees say that by entering upon the trial of the cause in the circuit court, offering proof and examining witnesses, appellant thereby entered her general appearance and cannot raise the question of jurisdiction now. Appellant, on the other hand, points out that under the present Civil Practice act and rules of this court she did not waive her right to contest the jurisdiction of the court by

entering upon the trial after her motion attacking the jurisdiction had been overruled. Under paragraph 3 of section 43 and section 48 of the Civil Practice act the appellant had a right to file a motion attacking the jurisdiction, together with such other motions as were desired to be made, and under rule 21 of this court she did not, by entering on the trial, waive the error in the refusal of her motion attacking the jurisdiction.

Proceedings in which citation may be issued against one alleged to hold property of an incompetent are purely statutory, and where there are express provisions in a special statute relating to procedure those provisions necessarily control. (*Wintersteen* v. *National Cooperage Co.* 361 Ill. 95.) There are here such express statutory provisions concerning the method of recovering property belonging to an incompetent. By going to trial after the circuit court overruled her motion to dismiss the proceedings against her for want of jurisdiction, appellant did not forfeit her right, on appeal, to assign error as to the overruling of her motion or to try the question of jurisdiction of the probate and circuit courts.

The probate court was without jurisdiction of the person of appellant and it matters not that it may be shown, on proper legal procedure, by which due process of law is exercised, that the bonds in question belonged to the estate of the incompetent. Short-cut court proceedings cannot be substituted for the provisions of a special statute where the rights and liberty of a citizen are involved.

The circuit court erred in overruling appellant's motion to dismiss the proceedings against her for want of jurisdiction, and the Appellate Court erred in affirming the judgment of the circuit court.

The judgments of the Appellate and the circuit courts are reversed.

*Judgments reversed.*

Mr. Justice Farthing, dissenting.